# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADAM JARCHOW and
MICHAEL D. DEAN,

     Plaintiffs,

  v.

STATE BAR OF WISCONSIN, a
professional association; STATE BAR OF
WISCONSIN BOARD OF
GOVERNORS; CHRISTOPHER E.
ROGERS, President of the State Bar of
Wisconsin; JILL M. KASTNER,
President-elect of the State Bar of
Wisconsin; STARLYN R.
TOURTILLOTT, Secretary of the State
Bar of Wisconsin; JOHN E. DANNER,
Treasurer of the State Bar of Wisconsin;
ODALO J. OHIKU, Chairperson of the
State Bar of Wisconsin Board of
Governors, and PAUL G. SWANSON,
Immediate Past-president of the State Bar
of Wisconsin, in their official capacities,

     Defendants.

Civil Case No.:19-CV-266

CIVIL RIGHTS COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF AND DAMAGES

---

## COMPLAINT

Plaintiffs Adam Jarchow and Michael D. Dean ("Plaintiffs"), for their Complaint against the Defendants, the State Bar of Wisconsin; the State Bar of Wisconsin Board of Governors; Christopher E. Rogers, President of the State Bar of Wisconsin; Jill M. Kastner, President-elect of the State Bar of Wisconsin; Starlyn R. Tourtillott, Secretary of the State Bar of Wisconsin; John E. Danner, Treasurer of the State Bar of Wisconsin; Odalo J. Ohiku, Chairperson of the State Bar of Wisconsin Board of Governors, and Paul G. Swanson, Immediate Past-president of the State Bar of Wisconsin, in their official capacities (collectively, "Defendants" or "State Bar"), allege and state as follows.

## Nature of the Action

1.      This civil-rights action challenges Wisconsin's unconstitutional requirements that attorneys licensed to practice law in Wisconsin must join and pay membership dues to the State Bar of Wisconsin. The State Bar of Wisconsin regularly engages in advocacy and other speech on matters of intense public interest and concern, and it funds that advocacy through mandatory dues payments. Accordingly, those requirements compel Plaintiffs' speech and compel them into an unwanted expressive association with the State Bar, in violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs therefore ask that this Court declare unconstitutional Wisconsin's requirements that attorneys join and fund the State Bar of Wisconsin, order Defendants to desist in enforcement of those requirements, and refund to Plaintiffs the dues that they have been unconstitutionally compelled to pay to the State Bar of Wisconsin.

## Parties

2.      Plaintiff Adam Jarchow is a resident of Polk County, Wisconsin, a licensed attorney under the laws of Wisconsin, and a member of the State Bar of Wisconsin pursuant to Wisconsin's Supreme Court rules requiring that he be a member of the bar in order to practice law. Wis. Sup. Ct. R. ("SCR") 10.01(1) ("There shall be an association to be known as the 'state bar of Wisconsin' composed of persons licensed to practice law in this state, and membership in the association shall be a condition precedent to the right to practice law in Wisconsin."). He has paid dues to the State Bar of Wisconsin since 2009.

3.      Plaintiff Michael D. Dean is a resident of Waukesha County, Wisconsin, a licensed attorney under the laws of Wisconsin, and a member of the State Bar of Wisconsin pursuant to Wisconsin's Supreme Court rules requiring that he be a member of the bar in order to practice law. Wis. Sup. Ct. R. ("SCR") 10.01(1) ("There shall be an association to be known as the 'state bar of Wisconsin' composed of persons licensed to practice law in this state, and membership in the association shall be a condition precedent to the right to practice law in Wisconsin."). He has paid dues to the State Bar of Wisconsin for over a decade.

2

4.      Defendant State Bar of Wisconsin ("State Bar") is a mandatory professional "association" as specified by Wisconsin Supreme Court's rules. SCR 10.01(1); *see also* Overview, State Bar of Wisconsin ("The State Bar of Wisconsin is a mandatory professional association, created by the Wisconsin Supreme Court . . . .").[1] The State Bar enforces the "rights, obligations and conditions of membership therein," SCR 10.01(2), and may be sued for "carrying out the purposes for which it is organized." SCR 10.02(1). The State Bar is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Its main office is located at 5302 Eastpark Blvd. Madison, WI 53718-2101.

5.      Defendant State Bar of Wisconsin Board of Governors ("Board") "manage[s] and direct[s]" the "affairs of the [State Bar] association." SCR 10.05(1). In that capacity, the Board is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action.

6.      Defendant Christopher E. Rogers is the President of the State Bar of Wisconsin; as such, he is an officer of the State Bar of Wisconsin, SCR 10.04(1), specifically its "chief executive officer," *Id.* 10.04(2)(a), and a member-at-large of the State Bar of Wisconsin Board of Governors, *Id.* In those capacities, the Defendant is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Mr. Rogers is sued in his official capacity.

7.      Defendant Jill M. Kastner is the President-Elect of the State Bar of Wisconsin; as such, she is an officer of the State Bar of Wisconsin, SCR 10.04(1), and a member-at-large of the State Bar of Wisconsin Board of Governors and serves on the executive committee. *Id.* 10.04(2)(b). In those capacities, the Defendant is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Ms. Kastner is sued in her official capacity.

---

[1] https://www.wisbar.org/aboutUs/Overview/Pages/overview.aspx (last visited Mar. 7, 2019).

3

8.      Defendant Starlyn R. Tourtillott is the Secretary of the State Bar of Wisconsin; as such, she is an officer of the State Bar of Wisconsin, SCR 10.04(1), and a member-at-large of the State Bar of Wisconsin Board of Governors. *Id.* 10.04(2)(d). In those capacities, the Defendant is enforcing the unconstitutional laws, rules customs, practices and policies complained of in this action. Ms. Tourtillott is sued in her official capacity.

9.      Defendant John E. Danner is the Treasurer of the State Bar of Wisconsin; as such, he is an officer of the State Bar of Wisconsin, SCR 10.04(1), and a member-at-large of the State Bar of Wisconsin Board of Governors. *Id.* 10.04(2)(e). In those capacities, the Defendant is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Mr. Danner is sued in his official capacity.

10.     Defendant Odalo J. Ohiku is the Chairperson of the State Bar of Wisconsin Board of Governors; as such, he is an officer of the State Bar of Wisconsin, SCR 10.04(1), and a member-at-large of the State Bar of Wisconsin Board of Governors. *Id.* 10.04(2)(c). In those capacities, the Defendant is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Mr. Ohiku is sued in his official capacity.

11.     Defendant Paul G. Swanson is the Immediate Past-President of the State Bar of Wisconsin; as such, he is an officer of the State Bar of Wisconsin, SCR 10.04(1), and a member-at-large of the State Bar of Wisconsin Board of Governors. *Id.* 10.04(2)(b). In those capacities, the Defendant is enforcing the unconstitutional laws, rules, customs, practices and policies complained of in this action. Mr. Swanson is sued in his official capacity.

## Jurisdiction and Venue

12.     This case raises claims under the First and Fourteenth Amendments of the federal Constitution, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgment Act, 22 U.S.C. § 2201, *et seq*. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

13.     Venue is proper in this District and Division because all Defendants are residents of Wisconsin and at least one Defendant resides in this judicial district and a

substantial part of the events or omissions giving rise to the claim occurred and are occurring in the District and Division. *See* 28 U.S.C. § 1391(b).

**Factual Allegations**

**A.     Wisconsin Supreme Court Rules Require Licensed Attorneys To Be Members of the State Bar and To Pay Dues to the State Bar**

14.     As a condition to practice law in Wisconsin, attorneys licensed in Wisconsin are required to join the mandatory state bar association—the Defendant State Bar of Wisconsin. Specifically, the Wisconsin Supreme Court rules direct: "There shall be an association to be known as the 'state bar of Wisconsin' composed of persons licensed to practice law in this state, and membership in the association shall be a condition precedent to the right to practice law in Wisconsin." SCR 10.01(1).[2]

15.     The Wisconsin Supreme Court rules demand "[e]very person who becomes licensed to practice law in [the] state" to "enroll in the state bar by registering . . . with the [State Bar of Wisconsin] within 10 days after admission to practice." SCR 10.03(2).

16.     The Wisconsin Supreme Court rules forbid an "individual other than an enrolled active member of the state bar" to "practice law in [the] state or in any manner purported to be authorized or qualified to practice law," *Id*. 10.03(4), with limited exceptions for "nonresident counsel to appear and participate in a particular action or proceeding in association with an active member of the state bar of Wisconsin who appears and participates in the action or proceeding." SCR 10.03(4)(b).

17.     The membership of the State Bar of Wisconsin is divided into four classes: "active members, judicial members, inactive members and emeritus members." SCR 10.03(a).

---

[2] Wisconsin Supreme Court "rules" governing the regulation of the state bar constitute statutes for analysis purposes. *See Lathrop v. Donohue*, 367 U.S. 820, 824-26 (1961) (treating now SCR 10.01 as a statute for purposes of 28 U.S.C. § 1257 analysis).

18.     The State Bar's website asserts it is a "professional association that provides educational, career development and other services to its 25,000 members."[3]

19.     Defendants are authorized to compel payment of dues from all classes of Wisconsin State Bar members, SCR 10.03(5)(a) ("The annual membership dues for state bar operations for an active member shall be established as provided herein."); *id.* (establishing "fractions of the dues of an active member" for "[o]ther classes of members."), except for emeritus members (members who are active or inactive members in good standing but at least 70 years of age and have requested emeritus status), SCR 10.03(3)(a).

20.     Defendants do compel the payment of such membership dues—termed "compulsory dues" by the Defendants themselves. Notice Concerning State Bar Dues Reduction and Arbitration Process, State Bar of Wisconsin § 1 (2016).[4] The annual membership dues vary based on membership classification: $258 for full dues-paying members; $129 for active new members and inactive members; $173 for nonvoting judicial members; and no cost to emeritus members. No Change in Annual Court Assessments and State Bar Dues for Coming Year: Pay by July 1, State Bar of Wisconsin, State Bar of Wisconsin (May 2, 2018).[5]

21.     If a member fails to pay annual dues or assessments for over 120 days after the payment is due, the Defendants may suspend the member's membership—with the Defendants' by-laws decreeing failure to pay after 120 days "shall automatically suspend the delinquent member," SCR ch. 10 app., art. I, § 3(a); *id.* § 3(b)—which bars the member from the "practice [of] law during the period of the suspension." SCR 10.03(6).

---

[3] https://www.wisbar.org/aboutUs/Pages/aboutus.aspx.
[4] https://www.wisbar.org/aboutus/membership/documents/keller-dues.pdf.
[5]
https://www.wisbar.org/NewsPublications/InsideTrack/Pages/Article.aspx?Volume=10&Issue=8&ArticleID=26331.

22.      A suspended member's name is sent to the State's Supreme Court and to "each judge of a court of record in [the] state," SCR ch. 10 app., art. I, § 3(a); *id.* § 3(b), ensuring the member will not be able to practice law in the state.

23.      The State Bar's "2019 budget of $11.5 million will be funded with $5.2 million in membership dues." (Updated) State Bar Board Adopts Budget, Hears E-filing and Private Bar SPD Rate Updates. State Bar of Wisconsin (Apr. 23, 2018).[6] "About 45 percent of the proposed 2020 budget relies on membership dues." Board Discusses Potential OLR Rule Changes, Proposed State Bar Budget, State Bar of Wisconsin (Feb. 18, 2019).[7]

24.      The State Bar provides members an optional dues reduction that accounts for certain "nonchargeable" activities, but the reduction does not reduce dues altogether. SCR 10.03(5)(b)(2). It is incumbent on the State Bar to "publish written notice of the activities that can be supported by compulsory dues and the activities that cannot be supported by compulsory dues." *Id.* The nonchargeable activities include a combination of political and ideological activities and activities not germane to regulation of the legal profession or improving legal services. The State Bar informs members it "may use compulsory dues of all members for all other activities, provided the activities are within the purposes of the State Bar as set forth in SCR 10.02(2)." Notice Concerning State Bar Dues Reduction and Arbitration Process, State Bar of Wisconsin § 1 (2016).[8] These activities are considered "chargeable." *Id.*

25.      The purposes of the State Bar set forth in SCR 10.02(2):

> The purposes of the association are to aid the courts in carrying on and improving the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service and high standards of conduct; to safeguard the proper professional interests of the members of the bar;

---

[6] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=26314.

[7] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=26856.

[8] https://www.wisbar.org/aboutus/membership/documents/keller-dues.pdf.

to encourage the formation and activities of local bar associations; to conduct a program of continuing legal education; to assist or support legal education programs at the preadmission level; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform and the relations of the bar to the public and to publish information relating thereto; to carry on a continuing program of legal research in the technical fields of substantive law, practice and procedure and make reports and recommendations thereon within legally permissible limits; to promote the innovation, development and improvement of means to deliver legal services to the people of Wisconsin; to the end that the public responsibility of the legal profession may be more effectively discharged.

SCR 10.02(2).

26.    The State Bar's Government Relations program is the "lobbying arm of the State Bar and some of its practice sections." Government Relations, State Bar of Wisconsin.[9] "The State Bar's Government Relations (GR) program works with State Bar members and state government officials (including legislators, executive branch and judicial branch agencies and their staff) to improve the administration of justice and the delivery of legal services in Wisconsin." *Id.*

27.    The State Bar has identified the following practice sections within the State Bar as permitted to lobby: Bankruptcy, Insolvency & Creditors' Rights; Business Law; Children & the Law; Civil Rights & Liberties; Construction & Public Contract Law; Criminal Law; Dispute Resolution; Elder Law and Special Needs; Family Law; Health Law; Indian Law; Litigation; Public Interest Law; Real Property, Probate & Trust Law; and Taxation Law. Sections, State Bar of Wisconsin.[10] A lobbying section must "charge[] annual dues at least equal to the cost of its legislative program so that the cost need not be borne by section nonmembers." SCR 10.05(4)(e).

28.    All Plaintiffs are attorneys licensed to practice law in Wisconsin.

---

[9] https://www.wisbar.org/aboutus/governmentrelations/Pages/government-relations.aspx#/ (last visited Mar. 7, 2019).
[10] https://www.wisbar.org/aboutus/overview/pages/sections.aspx (last visited Mar. 7, 2019).

29.     To maintain their licensure as attorneys in Wisconsin and as a condition of engaging in their chosen profession, Plaintiffs are compelled to be members of the State Bar and pay membership dues every year.

30.     By enforcing those requirements, Defendants act under color of state law.

**B.     The State Bar Speaks on Matters of Public Interest, Using Funds Plaintiffs Are Forced to Provide as a Condition to Practicing Law in Wisconsin**

31.     The State Bar uses compelled membership dues to fund its speech on a broad range of matters of public interest.

32.     The State Bar regularly proposes legislation to the Wisconsin Legislature.

33.     The State Bar regularly advocates on public policy issues, including legislation.

34.     The State Bar engages in a variety of speech and advocacy directed to the public.

35.     The State Bar publishes a variety of material addressing matters of public interest and concern. These publications include the Wisconsin Lawyer, the WisBar Inside Track, the Rotunda Report, the State Bar of Wisconsin website, the State Bar's Twitter feed, the State Bar's Facebook page, and books and pamphlets.

36.     The State Bar regularly publishes publications on matters of intense public controversy.

37.     The State Bar's speech includes the following policy-related advocacy that was funded, at least in part, through compelled membership dues:

a.      **Advocacy for Criminal Justice Issues in Governor's Budget.** In March 2019, the State Bar released a statement applauding the Governor's budget supporting increases in private bar rate, additional resources to District Attorneys and State Public Defenders, and addressing the "state's justice gap, by continuing to fund civil legal services."[11]

---

[11]

https://www.wisbar.org/NewsPublications/RotundaReport/Pages/Article.aspx?ArticleID=26871

b.     **Advocacy for Juvenile Justice Reform.** In February 2019, the State Bar announced its support for the Governor's "proposal to return 17 yr olds to juvenile justice system" through Twitter.[12] The posting provides an accompanying article local newspaper article entitled, "Gov. Evers Seeks To Raise The Age For Charging Teens As Adults And Delay Closure Of Lincoln Hills" describing the Governor's plan and the associated debate over it.

c.     **Advocacy Concerning State's Criminal Justice Budget.** In February 2019, the State Bar issued a statement in response to the Wisconsin Assembly Republican's unveiling of comprehensive criminal justice budget initiatives. The response focused on the Bar's support to pay progression for assistant district attorneys, public defenders, and private attorneys taking on public defender cases.[13]

d.     **Advocacy to Increase Private Bar Rate in Criminal Justice Budget.** In February 2019, the State Bar posted a request on Twitter to: "Make your voice heard. Ask Governor Evers to include an increase to the private bar rate in his budget proposal this year," with a link to online State Bar article advocating same.[14]

e.     **Advocacy on Abortion Coverage**. The State Bar actively opposed legislation relating to "prohibiting coverage of abortions through health plans sold through exchanges."[15]

f.     **Advocacy for Criminalizing Threats or Harm to Attorneys.** In April 2018, the State Bar "worked on" and "supported" legislation the State enacted that

---

[12] https://twitter.com/SBWRotundaRpt/status/1100804160793034752. The SBW Rotunda Report (@SBWRotundaRpt) is the Twitter account that is self-described as: "The Government Relations program at the State Bar of Wisconsin works on issues of importance to the courts, the legal profession and the public."
[13] https://www.wisbar.org/NewsPublications/RotundaReport/Pages/Article.aspx?ArticleID=26855
[14] https://twitter.com/SBWRotundaRpt/status/1093955107941699585.
[15] https://www.wisbar.org/aboutus/governmentrelations/pages/policy-positions.aspx (providing Bar's position on Assembly Bill 154 in the 2015-2016 legislative term).

made it a "Class H felony to threaten or cause bodily harm to an attorney or other representative of the court or their family involved in proceedings affecting children and families."[16]

      g.     **Advocacy for Elder Law Reform.** The State Bar's Elder Law Section supported legislation related to the adoption of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act signed into law in April 2018.[17]

      h.     **Advocacy for Family Law Legislation Addressing Child Relocation.** The State Bar's Family Law Section supported bill enacted in April 2018 that affected children subject to legal custody by "provid[ing] a clear process" to a parent desiring to move more than 100 miles away.[18]

      i.     **Advocacy for Restoring Legal Services Corporation (LSC) Funding.** In 2017, the State Bar urged the restoration of LSC funding eliminated in President Trump's proposed 2018 federal budget. The LSC funded two state-wide organizations that provided free legal services to low income individuals related to civil matters. The State Bar President expressed grave concerns over the funding elimination and the "burden [elimination] will place on low income families in Wisconsin, and the resulting challenges to our state's justice system."[19] On Apr. 7, 2017, the State Bar tweeted, "Wisconsin attorneys, advocates say Trump budget cuts threaten legal aid

---

[16] https://www.wisbar.org/NewsPublications/RotundaReport/Pages/Article.aspx?ArticleID=26282.

[17] https://www.wisbar.org/NewsPublications/InsideTrack/Pages/Article.aspx?Volume=10&Issue=6&ArticleID=26254 (discussing Assembly Bill 629 under "Adult Guardianship Law" in legislative wrap-up). .

[18] *Id*. (discussing Assembly Bill 551 under "Child Custody" in legislative wrap-up). (.

[19] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=25489.

organizations"[20] with linked article.[21] On Apr. 17, 2017, the State Bar tweeted, "Lawyers, advocates for the poor rally to save Legal Services Corp. from Trump budget cut"[22] with linked article. The article provided: "There have been prior runs at trimming back the LSC, but nothing like the complete elimination Trump has proposed." The article concluded with: "At a speech commemorating the LSC's 40th anniversary, the late Justice Antoni Scalia said the organization, 'pursues the most fundamental of American ideals, and it pursues equal justice in those areas of life most important to the lives of our citizens.'"[23]

j.      **Advocacy To Include Parent of Sibling to Notice of Removal.** In 2015, the State Bar actively supported the 2015 Wisconsin Act 101.[24] The Act added to the adult relatives that must be notified upon a child's removal from the custody of the child's parent the "parent of a sibling of the child who has legal custody of that sibling."[25]

k.      **Advocacy Related to Unemployment Insurance Fraud.** In 2015, the State Bar opposed a bill that would ban people who defraud the State's insurance program.[26]

l.      **Advocacy Against Amending Child Custody Presumptions.** The State Bar actively opposed a bill introduced in 2013 that provided "when the court allocates

---

[20] https://twitter.com/StateBarofWI/status/850372496905863169.
[21] https://madison.com/ct/news/local/govt-and-politics/madison-attorneys-advocates-say-trump-budget-cuts-threaten-legal-aid/article_632664d7-4a5f-5f4c-8342-dde6e057b60a.html?utm_medium=social&utm_source=twitter&utm_campaign=user-share.
[22] https://twitter.com/StateBarofWI/status/852877074566189057.
[23] https://www.jsonline.com/story/news/blogs/proof-and-hearsay/2017/04/13/lawyers-advocates-poor-rally-save-legal-services-corp-trump-budget-cut/99592964/.
[24] https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx#Position (providing Bar's position on Assembly Bill 193 in the 2015-2016 legislative term).
[25] http://docs.legis.wisconsin.gov/2015/related/proposals/ab193.
[26] https://wislawjournal.com/2015/09/29/state-bar-weighs-in-on-proposed-unemployment-benefits-ban/.

periods of physical placement, instead of maximizing the amount of time a child may spend with each parent, taking into consideration geographic separation and accommodations for different households, the court must presume that a placement schedule that equalizes to the highest degree the amount of time the child may spend with each parent is in the child's best interest."[27] The bill failed to pass.

        m.    **Advocacy Against Confidentiality Exception for School Officials.** In 2011, the State Bar actively opposed a bill that would make an exception to the existing confidentiality privilege related to communication with a school guidance counselor, school teacher, or teacher's aide when the school guidance counselor, school teacher, or teacher's aide received information "he or she [was] required to report under the state's mandatory child abuse and neglect reporting laws."[28]

        n.    **Advocacy To Restore Felon Voting Rights.** The State Bar actively supported a bill introduced in 2009 to restore the voting rights to felons.[29] The bill failed to pass.

        o.    **Advocacy to Eliminate Spiritual Exception to Child Abuse Law.** The State Bar actively supported a bill to remove an exception for spiritual treatment versus

---

[27]https://docs.legis.wisconsin.gov/2013/related/proposals/ab540 (Assembly Bill 540 with Legislative Reference Bureau analysis); *see also* https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx#Position (providing Bar's position on Assembly Bill 540 in the 2015-2016 legislative term).  .

[28] https://docs.legis.wisconsin.gov/2011/related/proposals/ab249 (Assembly Bill 249 with Legislative Reference Bureau analysis); *see also* https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx#Position (providing Bar's position on Assembly Bill 249 in the 2015-2016 legislative term).

[29] https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx (providing Bar's position on Assembly Bill 353 in the 2015-2016 legislative term); *see also* http://docs.legis.wisconsin.gov/2009/related/proposals/ab353 (bill supported).

medical or surgical treatment of a child as related to child abuse laws. The bill,[30] Assembly 590, failed to pass.[31]

      p.    **Advocacy Against DNA Samples From Juvenile Sex Offenders.** The State Bar actively opposed a bill requiring "law enforcement agencies to collect a biological specimen for DNA analysis from every adult who is arrested for a felony and every juvenile who is taken into custody for certain sexual assault offenses that would be felonies if committed by an adult."[32] The bill failed to pass.

      q.    **Advocacy for Legal Services Consumer Protection Act.** In 2007, the State Bar petitioned the State Supreme Court, which has jurisdiction over the practice of law in the state, to adopt a rule clearly defining the "'practice of law' for consumer protection purposes" and, to "[c]reate an administrative system to enforce the new rule."[33]

      r.    **Advocacy on Policies Respecting the Legal Profession.** The State Bar takes legislative positions on items deemed of importance to the legal profession guided by six principles: Regulation of the Practice of Law; Delivery of Legal Services; Administration of Justice; Funding of the Justice System; Criminal Practice and Procedure; and Civil Practice and Procedure. The Bar posts its Policy Position Statements online (see "Policy Positions—2016" entry below). State Bar positions on current legislation include strong support for both expungement of certain crimes and allowing district attorneys, deputy district attorneys, and assistant district attorneys engage in the private practice of law for certain civil purposes.[34]

---

[30] http://docs.legis.wisconsin.gov/2009/related/proposals/ab590.pdf.
[31] https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx (providing Bar's position on Assembly Bill 590 in the 2015-2016 legislative term).
[32] http://docs.legis.wisconsin.gov/2009/related/proposals/ab511.pdf; *see also* https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx (providing Bar's position on Assembly Bill 511 in the 2015-2016 legislative term).
[33] https://tinyurl.com/WSB-advocacy-LSCPA.
[34] https://www.wisbar.org/aboutus/governmentrelations/Pages/Policy-Positions.aspx#Position (providing six principles for legislative positions);

38.     The State Bar's speech includes the following additional advocacy:

a.     **Policy Positions—2016.** The State Bar published a book of its policy positions.[35] Policy areas covered include: regulation and the practice of law; delivery of legal services; administration of justice; funding of the justice system; criminal practice and procedure; and civil practice and procedure. Select positions include:

i.     **Supports State Supreme Court Regulation of the Bar and Maintenance of the Integrated Bar.** The State Bar supports its regulation by the State Supreme Court, opposes transfer of regulation to another government branch, and opposes "any legislative attempt to restrict the Court's authority over fees and assessments related to the State Bar or the regulation of the practice."[36]

ii.     **Opposes Expanding Powers of Realtors.** The State Bar opposes efforts to expand the powers of real estate licensees to provide legal advice, including enhancing abilities to negotiate and draft contracts and explain "consequences of action taken during transactions."[37]

iii.     **Opposes Regulation of the Bar Except by the State Supreme Court.** The State Bar opposes transfer of regulation of the Bar from the State Supreme Court to any other branch of government.[38]

iv.     **Opposes Professional Tax on Legal Services.** The State Bar believes access to legal services is "essential to the operation of an ordered

---

https://www.billtrack50.com/Public/Stakeholder/plv0dxACCUCOAvljvFiOeg (State Bar positions on bills in the 2019-2020 legislative term); http://docs.legis.wisconsin.gov/2019/related/proposals/ab33.pdf (Assembly Bill 33 concerning expungement).

[35] State Bar of Wisconsin Policy Positions 2016, State Bar of Wisconsin (2016), https://www.wisbar.org/aboutus/governmentrelations/Documents/BOGPolicyPositions2017.pdf.

[36] *Id.* at 7.

[37] *Id.*

[38] *Id.*

society" and a legal service tax would increase legal fees and reduce low-income and moderate-income access to justice.[39]

v.     **Opposes Tax Reform Act.** The State Bar opposes converting tax evaluation on law firms from computation on cash receipts and disbursements method to an accrual method.[40]

vi.    **Supports Enforcement Against the Unauthorized Practice of Law.** The State Bar believes persons engaging in the unauthorized practice of law are "harmful to consumers" of the State and supports "meaningful enforcement" of violations.[41]

vii.   **Supports Diversity.** The State Bar is an "inclusive organization" that encourages "diversity among its leadership, its membership and the entire legal community"; encourages "local and specialty bars to promote diversity and inclusion in their membership and leadership"; and encourages "legal employers and law firms to promote diversity and inclusion within their workplaces."[42]

viii.  **Supports Expungement of Criminal Records Under State Supreme Court.** The State Bar supports the "broad remedial purpose of expungement" and supports the authority of the State's Supreme Court to provide lower state courts with guidance on expungement.[43]

ix.    **Opposes Certain State Immigration Laws.** The State Bar "opposes any state efforts to regulate actions that conflict" with the Supremacy Clause "whenever the federal government is acting in pursuit of its constitutionally authorized powers. Consequently, the State Bar opposes any

---

[39] *Id.*
[40] *Id.*
[41] *Id.* at 8.
[42] *Id.* at 12.
[43] *Id.* at 13

state efforts related to immigration that encourage a conflict to arise between federal law and either the state constitution or state law."[44]

      x.    **Supports Public Financing of State Supreme Court Campaigning.** The State Bar supports public funding of State Supreme Court campaigns to maintain the court's integrity and independence.[45]

      xi.    **Supports Returning Jurisdiction Over 17-year-olds to Juvenile System.** The State Bar support returning original jurisdiction of 17-year-old juveniles to the juvenile justice system because it believes the adult criminal justice system is "neither adequately equipped nor designed to handle juveniles in the adult system."[46] However, the Bar does not advocate the elimination of the ability to try "truly dangerous and mature 17-year-olds in adult court when appropriate."[47]

      xii.    **Opposes Death Penalty.** The State Bar opposes reinstatement of the death penalty in the State.[48]

      xiii.    **Opposes Racial and Ethnic Profiling.**[49]

      xiv.    **Supports Noneconomic Damage Awards for Unlawful Discrimination.** The State Bar advocates that noneconomic damage awards for unlawful discrimination receive the same federal tax treatment as noneconomic damage awards for personal injury.[50]

      b.    **Commentary on Online Gun Sales.** On Feb. 15, 2019, the State Bar tweeted, "Should federal internet law protect gun site Armslist from liability in the

---

[44] *Id.*
[45] *Id.* at 14.
[46] *Id.* at 20.
[47] *Id.*
[48] *Id.* at 21.
[49] Id. at 22.
[50] *Id.* at 27.

17

Azana Spa mass shooting?"[51] with linked article. The article discusses a gun maker liability case in the Wisconsin State Supreme Court addressing whether a "web-based gun marketer can be held liable for facilitating an unlawful weapon sale." The article quotes Patti Seger, executive director of End Domestic Abuse Wisconsin: "If the Supreme Court overturns the lower court decision to find that Armslist is immune from suit, domestic abusers will continue to have easy — and deadly — access to firearms."[52]

        c.    **Advocacy on Second Amendment Rights.** On May 10, 2018, the State Bar tweeted, "Is the Supreme Court Taking Action on Guns By Not Acting?"[53] and linked to an article. The article discusses SCOTUS not taking up lower court decisions that have upheld restrictions on the Second Amendment individual right to keep and bear arms. The article observes the Court's inaction "has led some to assume that the Roberts court has become a silent but influential partner on the side of gun-control advocates, taking action by deciding not to act. But [a law professor] says the court has walked more of a middle path, weighing in sparingly on the issue and allowing the states and the lower federal courts to define the Second Amendment."[54]

        d.    **Advocacy on Sexual Harassment in the Legal Profession.** In December 2018, the State Bar Board of Governor's "adopted an official policy against sexual harassment in the legal profession and encouraged State Bar members to make a similar commitment within law firms and legal departments."[55]

---

[51] https://twitter.com/StateBarofWI/status/1096474255204732932.

[52] https://www.jsonline.com/story/news/crime/2019/02/14/gun-sales-website-armslist-argues-immunity-azana-spa-shooting/2863293002/.

[53] https://twitter.com/StateBarofWI/status/972484759589924864.

[54] https://www.usnews.com/news/the-report/articles/2018-03-07/is-the-supreme-court-taking-action-on-guns-by-not-acting?src=usn_tw.

[55] https://www.wisbar.org/newspublications/pages/general-article.aspx?articleid=26732 (discussing adoption of anti-sexual harassment policy).

e.     **Adoption of "Diversity & Inclusion Action Plan."** In December 2018, the State Bar Board of Governor's adopted a detailed action plan to advance diversity and inclusion within the legal profession—one of the State Bar's five strategic priorities. Strategic Priorities, State Bar of Wisconsin (June 15, 2016). "The action plan includes steps to promote diversity and inclusion among State Bar leadership, including officers, board members, and committee members. It also emphasizes strengthening the State Bar's relationship with affinity bar associations and other diverse legal groups." "[T]he plan calls for recruiting and training diverse attorneys for leadership positions within the State Bar and to serve as advisors on diversity and inclusion issues" and "increasing diversity among the leadership of section and division boards and their memberships" as well "State Bar programming and publications."[56]

f.     **Advocacy on "Disparate and Mass Incarceration."** In June 2018, the State Bar's Board of Governor's adopted policy positions related to "disparate and mass incarceration to include: (1) supporting reform to bail and pretrial detention laws and to move forward with a risk-assessment instrument as the basis for pretrial detention decisions; (2) amending statutes to facilitate prompt release of inmates with "extraordinary health conditions" deemed not a threat to public safety; (3) expanding geriatric release statute to allow earlier release for older inmates; and (4) supporting regular collection and dissemination of data on racial disparities in the criminal justice system.[57]

g.     **Commentary on Churches Challenging City's LGBT Ordinance.** On Feb. 26, 2018, the State Bar tweeted, "Churches Challenge Wisconsin City's LGBT Ordinance"[58] with linked article. The article opens with: "Five churches and a

---

[56] *Id.* (discussing "Board Adopts Diversity & Inclusion Plan").
[57] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=26433.
[58] https://twitter.com/StateBarofWI/status/968186448867446784.

Christian radio station sued a Wisconsin city, claiming its recently passed nondiscrimination ordinance protecting transgender residents should not apply to them."[59]

h.     **Advocacy on President Trump's National Labor Relations Board Nominee.** On Feb. 1, 2018, the State Bar tweeted, "If confirmed by the Senate, John Ring, President Trump's nominee for chair of the National Labor Relations Board, will restore the pro-management majority to the NLRB. Just what might be expected after his confirmation?"[60] and a link to an article.[61] The article discussed the NLRB's "roll[] back [of] several key decisions announced since 2009" because of the new Republican majority on the NLRB. The author observed "President Trump nominated Miscimarra's replacement: John Ring, an accomplished management-side labor lawyer" and predicted, "Once confirmed by the Senate, his appointment will restore the pro-management majority to the NLRB, so that it can get back to the business of rolling back the radical agenda announced over recent years."[62]

i.     **Commentary on President Trump's "Refugee Ban."** On Feb. 2, 2017, the Wisconsin State Bar published an article to its website's Labor and Employment Law Section Blog entitled, "How Should Employers Respond to Trump's Muslim Ban?" The article opened with a factual account of the executive order, then provided considerations for employers related to the executive order's impact on their businesses. The article then shifted tone with a sub-heading, "Why the Executive Order Is Immoral and Unconstitutional." The author wrote:

> Much has been said about this ban by many commentators. I usually would not criticize political actions in such an article and would focus instead on the impacted legal and business issues. I realize this

---

[59] https://www.courthousenews.com/churches-challenge-wisconsin-citys-lgbt-ordinance/.
[60] https://twitter.com/StateBarofWI/status/959177162829041664.
[61] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=26132.
[62] *Id.*

> additional commentary may be off-putting to readers and even potentially harmful for future prospects. I understand if that is your reaction and accept any subsequent consequences. However, this executive action offends core constitutional principles and values that I respect as an immigrant and as an attorney. Therefore, I cannot simply gloss over its obnoxious aspects.

Nilesh Patel, How Should Employers Respond to Trump's Muslim Ban?, State Bar of Wisconsin's Labor & Employment Law Blog (Feb. 2, 2017). [63] The postscript to the article provided: "From the editor: We are aware that there may be multiple viewpoints on blog topics. We welcome submissions that may provide a counterpoint to this or any Labor and Employment Law Section Blog topic." *Id.*

j.   **Response to Statements by President Trump.** On February 10, 2017, in response to President Trump's tweets referencing a district court judge that suspended an executive order, including characterizing the judge as a "so-called judge," the State Bar's Board of Governors adopted a statement characterizing the President's tweets as "ill-considered," discussing the rule of law and an independent judiciary, and stating "there are no 'so-called judges' in America."[64] On the same day, the Bar tweeted, "Board of Governors urge respect for independent judiciary, addresses comments by President Trump" with link to the statement.

k.   **Advocacy for Nondiscrimination Policies Based on Sexual Orientation and Gender Identity.** On July 24, 2015, the State Bar tweeted, "Tip: Implementing nondiscrimination policy? Include sexual orientation, gender identity. Attend LGBT session"[65] with link to registration website.

---

[63] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=25372.
[64] https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=25403.
[65] https://twitter.com/StateBarofWI/status/624675936298889217.

l.      **Advocacy for Prosecutor Funding.** In 2010, the State Bar President warned that potential funding cuts by the Governor could "adverse[ly] impact [the State's] justice system." [66]

m.      **Advocacy for Access to Justice, "Consumer Safeguards," and "Judicial Campaign Reform."** In 2007, the incoming State Bar President announced to over 1000 attorneys at the Bar's annual convention that he would push for "improved access to justice, consumer safeguards and judicial campaign reform during his one-year term."[67]

39.     The advocacy by the State Bar described above, as well as other speech by and published by the State Bar, concerns matters of public interest and concern.

## C.      The Plaintiffs Disagree with the State Bar's Speech and Object to Being Associated with the State Bar

40.     The State Bar is an expressive association—that is, its members join together for the purpose of engaging in advocacy and other speech.

41.     Plaintiffs are compelled to pay annual membership dues.

42.     The Plaintiffs are compelled to subsidize the State Bar's speech on matters of public interest and concern.

43.     The State Bar provides a limited mechanism by which members may avoid subsidizing some of the State Bar's speech. The State Bar provides an optional dues reduction for certain "nonchargeable" activities that currently includes "all direct lobbying activity." Board Adopts Policy on Dues Rebate Amount, Supports Pro Hac Vice Exemption, State Bar

---

[66]

https://www.wisbar.org/NewsPublications/Newsroom/Old%20Press%20Releases%20pre 2011/ADAPressRelease.pdf.

[67]

https://www.wisbar.org/NewsPublications/Newsroom/Old%20Press%20Releases%20pre 2011/BastingPressRelease.pdf.

of Wisconsin (Feb. 9, 2018).[68] The State Bar requires members to opt-out of financing activities it deems "nonchargeable."

44.    Nonetheless, the State Bar still treats as "chargeable" much of its speech on matters of public interest and concern, including non-lobbying advocacy concerning the regulation of the legal profession and legal reform and speech on many subjects pertaining to the practice of law, the operation of government, and the provision of public services.

45.    Accordingly, there is no mechanism by which a member may avoid subsidizing entirely the State Bar's speech on matters of public interest and concern.

46.    Plaintiffs individually disagree with portions of the State Bar's speech on matters of public interest and oppose being compelled to support that speech with their membership dues.

47.    In particular, Plaintiffs disagree with the following speech by the State Bar:

a.    Plaintiff Adam Jarchow disagrees with the State Bars speech and advocacy on, among other things, criminal justice issues, Legal Services Corporation Funding, felon voting rights, maintaining an integrated bar, the unauthorized practice of law, professional taxes, tax reform, immigration law, public campaign financing, and the death penalty.

b.    Plaintiff Michael D. Dean disagrees with the State Bar's speech and advocacy on, among other things, unemployment insurance fraud, free exercise of religion, the unauthorized practice of law, and immigration law.

48.    Plaintiffs individually disagree with other speech by the State Bar.

49.    Plaintiffs do not wish to fund the State Bar's advocacy and other speech and, if given the choice, would not fund those activities.

50.    Plaintiffs object to being required to be members of the State Bar of Wisconsin.

---

[68]

https://www.wisbar.org/NewsPublications/InsideTrack/Pages/Article.aspx?Volume=10&Issue=3&ArticleID=26170.

51.     Plaintiffs object to associating with the State Bar and its speech.

52.     Plaintiffs have suffered, are suffering, and will suffer irreparable harm from being required to join and pay dues to the State Bar.

**D.      Mandatory Membership in, and Compelled Contribution to, the State Bar Is Not Tailored To Support Any Compelling State Interest**

53.     The only possible state interests served by requiring attorneys to join and pay dues to the State Bar are regulating the legal profession and improving the quality of legal services.

54.     Eighteen states regulate the practice of law without requiring attorneys to join and pay dues to a bar association.

55.     Like those eighteen states, Wisconsin could use means significantly less restrictive of First Amendment freedoms than compelling membership and funding of the State Bar to regulate the legal profession and improve the quality of legal services.

**Count One: Compelling Dues Payments to the
State Bar Violates Plaintiffs' First Amendment Rights**

56.     Plaintiffs incorporate and re-allege each and every allegation in the foregoing paragraphs as though fully set forth herein.

57.     The First Amendment to the United States Constitution provides: "Congress shall make no law…abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

58.     The Fourteenth Amendment to the United States Constitution incorporates the protection of the First Amendment against the States.

59.     The freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

60.     The First Amendment likewise protects "right to eschew association for expressive purposes." *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018).

61.     Compelled association is permissible only when it "serve[s] a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus*, 138 S. Ct. at 2465.

62.     By requiring Plaintiffs to make financial contributions in support of the State Bar, Defendants impinge the Plaintiffs' rights under the First and Fourteenth Amendments to be free from compelled association.

63.     Because Wisconsin could regulate the legal profession through means significantly less restrictive of First Amendment freedoms, compelling dues payments to subsidize the State Bar's speech violates Plaintiffs' rights under the First and Fourteenth Amendments.

64.     Plaintiffs have no adequate remedy at law.

65.     The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

66.     The dispute is real and substantial, as the Defendants are continuing to collect fees from Plaintiffs' as a condition of practicing law in Wisconsin.

67.     The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the ongoing requirement to pay dues.

68.     As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the State Bar regarding their respective legal rights, and the matter is ripe for review.

69.     Plaintiffs are entitled to injunctive and declaratory relief providing that the requirement to pay membership dues to the State Bar as a condition of being licensed to practice law in Wisconsin is unconstitutional.

**Count Two: Requiring Plaintiffs To Join the State Bar**
**Violates Their First Amendment Rights**

70.     Plaintiffs incorporate and re-allege each and every allegation in the foregoing paragraphs as though fully set forth herein.

71.     By requiring Plaintiffs to be members of the State Bar, Defendants are impinging the Plaintiffs' rights under the First and Fourteenth Amendments to be free from compelled speech and compelled association.

72.     Because Wisconsin could regulate the legal profession through means significantly less restrictive of First Amendment freedoms, compelling membership in the State Bar violates Plaintiffs' rights under the First and Fourteenth Amendments.

73.     Plaintiffs have no adequate remedy at law.

74.     The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

75.     The dispute is real and substantial, as the Defendants are continuing to require Plaintiffs to maintain membership in the State Bar as a condition of practicing law in Wisconsin.

76.     The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the ongoing requirement to maintain membership in the State Bar.

77.     As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the State Bar regarding their respective legal rights, and the matter is ripe for review.

78.     Plaintiffs are entitled to injunctive and declaratory relief providing that the requirement to become a member of the State Bar as a condition of being licensed to practice law in Wisconsin is unconstitutional.

**Costs and Attorneys' Fees**

79.    Pursuant to 42 U.S.C § 1988, the Plaintiffs seeks an award of costs and attorneys' fees incurred in the litigation of this case.

**Prayer for Relief**

For these reasons, Plaintiffs requests that the Court:

(A)    Enter a judgment declaring that Wisconsin's statute requiring payment of mandatory dues to the State Bar, codified by the operation and effect of SCR 10.01; *id.* 10.03(2)-(6); and *id.* ch. 10 app., art. I, § 3, impermissibly abridges Plaintiffs' First Amendment rights;

(B)    Enter a judgment declaring that Wisconsin's statute requiring membership in the State Bar, codified at SCR 10.01(1), impermissibly abridges Plaintiffs' First Amendment rights;

(C)    Enjoin Defendants from continuing to collect membership dues;

(D)    Enjoin Defendants from continuing to require membership in the State Bar;

(E)    Order Defendants to refund Plaintiffs' membership-dues payments collected in violation of Plaintiffs' rights;

(F)    Grant Plaintiffs additional or different relief as the Court deems just and proper, including an award of reasonable attorneys' fees and the costs of this action.

Dated: April 8, 2019                                          Respectfully submitted,

                                                            */s/* RICHARD M. ESENBERG
                                                            RICHARD M. ESENBERG,
                                                            WI Bar No. 1005622
                                                            WISCONSIN INSTITUTE FOR LAW & LIBERTY
                                                            1139 East Knapp Street
                                                            Milwaukee, WI 53202-2828
                                                            (414) 727-9455 (phone)
                                                            (414) 727-6385 (fax)
                                                            rick@will-law.org

DAVID B. RIVKIN, JR.*
ANDREW M. GROSSMAN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1697 (phone)
(202) 861-1783 (fax)
agrossman@bakerlaw.com

*Attorneys for Plaintiff*

* pro hac vice motions forthcoming