UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ADAM JARCHOW and<br>MICHAEL D. DEAN,<br><br>       Plaintiffs,<br><br>    v.<br><br>STATE BAR OF WISCONSIN, a<br>professional association; STATE BAR OF<br>WISCONSIN BOARD OF<br>GOVERNORS; CHRISTOPHER E.<br>ROGERS, President of the State Bar of<br>Wisconsin; JILL M. KASTNER,<br>President-elect of the State Bar of<br>Wisconsin; STARLYN R.<br>TOURTILLOTT, Secretary of the State<br>Bar of Wisconsin; JOHN E. DANNER,<br>Treasurer of the State Bar of Wisconsin;<br>ODALO J. OHIKU, Chairperson of the<br>State Bar of Wisconsin Board of<br>Governors, and PAUL G. SWANSON,<br>Immediate Past-president of the State Bar<br>of Wisconsin, in their official capacities,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3:19-CV-00266<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

    A.  The structure of the State Bar ......................................................... 1

    B.  Plaintiffs' Complaint ....................................................................... 6

ARGUMENT ............................................................................................................ 7

  I.  The Complaint Fails to State a First Amendment Claim as a Matter of Law ................ 7

    A.  Any facial First Amendment challenges fail as a matter of law under *Keller* and its progeny. .................................................................. 7

    B.  An as-applied First Amendment challenge fails as a matter of law for numerous reasons. ........................................................................ 10

        1.  The Complaint fails to allege that any of the State Bar's activities are not germane. ......................................................................... 11

        2.  *Keller* forecloses challenges to the State Bar's activities funded by voluntary dues. ...................................................................... 13

        3.  The statute of limitations bars challenges to the State Bar's activities occurring before April 8, 2013 ...................................... 16

        4.  *Keller* forecloses challenges to the State Bar's activities occurring after the State Bar's most recent available audit. ....................... 17

        5.  The five activities of the State Bar that are funded by mandatory dues and that Plaintiffs have timely challenged are nevertheless germane from the face of the Complaint. ................................................ 20

        6.  Plaintiff Jarchow lacks standing because he has never taken the *Keller* Dues Reduction. ............................................................. 22

  II.  The Eleventh Amendment Requires Dismissal of Much of this Lawsuit. ................... 25

    A.  The Eleventh Amendment requires dismissal of all claims against the State Bar and the State Bar Board of Governors. .................................. 25

    B.  The Eleventh Amendment also requires dismissal of all claims against Kastner, Ohiku, and Swanson because their official duties are not at issue here. ................................................................................... 26

C.  The Eleventh Amendment bars Plaintiffs' claims for a refund of their
mandatory dues in its entirety. ............................................................................27

III.  Qualified Immunity also Shields the Officer Defendants from Claims for a
Refund. ........................................................................................................................ 28

CONCLUSION .............................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
    521 U.S. 203 (1997) .......................................................................................................10, 26

*Air Line Pilots Ass'n v. Miller*,
    523 U.S. 866 (1998) ..............................................................................................................12, 13

*Alper v. Fla. Bar*,
    771 So. 2d 523 (Fla. 2000) (per curiam) ..............................................................................22

*Bonte v. U.S. Bank, N.A.*,
    624 F.3d 461 (7th Cir. 2010) ................................................................................................22

*Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*,
    475 U.S. 292 (1986) ..............................................................................................12, 17, 19, 24

*Crosetto v. State Bar of Wis.*,
    12 F.3d 1396 (1993) ...................................................................................................... *passim*

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ..............................................................................................25, 27, 28

*Enger v. Chicago Carriage Cab Corp.*,
    812 F.3d 565 (7th Cir. 2016) ................................................................................................12, 13, 15

*Ford Motor Co. v. Dep't of Treasury of Ind.*,
    323 U.S. 459 (1945) ..............................................................................................................28

*Frances J. v. Wright*,
    19 F.3d 337 (7th Cir. 1994) ..................................................................................................26

*Hammond v. Clayton*,
    83 F.3d 191 (7th Cir. 1996) ..................................................................................................24

*Harris v. Quinn*,
    573 U.S. 616 (2014) ..............................................................................................................9, 10

*Hemberger v. Bitzer*,
    574 N.W.2d 656 (Wis. 1998) ................................................................................................16

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) ..........................................................................................................23

*Idaho v. Coeur d'Alene Tribe*,
    521 U.S. 261 (1997) ..............................................................................................................26

*In re Amend. of State Bar Rules: SCR 10.03(5)*,
   slip op. (Wis. Jan. 21, 1986) .................................................................6

*In re Amend. of Sup. Ct. Rules*: *10.03(5)(b) – State Bar Membership Dues
   Reduction*,
   174 Wis. 2d xiii (1993) .......................................................................6

*In re Discontinuation of the State Bar of Wis. as an Integrated Bar*,
   286 N.W.2d 601 (Wis. 1980) ..............................................................6

*In re Integration of the Bar*,
   25 N.W.2d 500 (Wis. 1946) .................................................................5

*In re Integration of the Bar*,
   77 N.W.2d 602 (Wis. 1956) .................................................................6

*In re Integration of the Bar*,
   93 N.W.2d 601 (Wis. 1958) .................................................................6

*In re Petition for a Voluntary Bar*,
   No. 11-01 (Wis. July 6, 2011) ............................................................6

*In re Petition to Amend SCR 10.03(5)(b)1*,
   No. 09-08 (Wis. Nov. 17, 2010) ..........................................................6

*In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e)
   and to Amend SCR 10.03(6)*,
   No. 17-04, slip op. (Wis. Apr. 12, 2018) ...........................................6

*In re Petition to Review Change in State Bar Bylaws*,
   No. 11-05, slip op. (Wis. Oct. 7, 2011)...............................................6

*In re Petition to Review State Bar Bylaw Amends.*,
   407 N.W.2d 923 (Wis. 1987) ..............................................................6

*In re Reg. of the Bar of Wis.*,
   81 Wis.2d xxxv (1978) ........................................................................6

*In re State Bar of Wisc.: Membership*,
   485 N.W.2d 225 (Wis. 1992) ..............................................................6

*Integration of Bar Case*,
   11 N.W.2d 604 (Wis. 1943)..................................................................5

*Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*,
   138 S. Ct. 2448 (2018) ...................................................................9, 10

*Katz v. United States*,
    389 U.S. 347 (1967) ....................................................................................... 23

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990) .................................................................................... *passim*

*Kingstad v. State Bar of Wis.*,
    622 F.3d 708 (7th Cir. 2010) ................................................................ *passim*

*Lathrop v. Donohue*,
    102 N.W.2d 404 (Wis. 1960) ............................................................................ 6

*Lathrop v. Donohue*,
    367 U.S. 820 (1961) ................................................................................. 21, 22

*Levine v. Heffernan*,
    864 F.2d 457 (7th Cir.1988) ......................................................................... 5, 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 23, 24, 25

*Malone v. Corr. Corp of Am.*,
    553 F.3d 540 (7th Cir. 2009) .......................................................................... 16

*Menominee Indian Tribe v. Thompson*,
    161 F.3d 449 (7th Cir. 1998) .......................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ...................................................................... 12, 13, 15

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) .......................................................................... 15

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) ....................................................................................... 27

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) .......................................................................... 23

*Report of Comm. to Review the State Bar*,
    334 N.W.2d 544 (Wis. 1983) ............................................................................ 6

*Rosado v. Gonzalez*,
    832 F.3d 714 (7th Cir. 2016) .................................................................... 16, 17

*Seminole Tribe v. Fla. Dept. of Revenue*,
    750 F.3d 1238 (11th Cir. 2014) ..................................................................... 28

*Spokeo, Inc. v. Robins,*
 136 S. Ct. 1540 (2016) ...........................................................................23

*State ex rel. Armstrong v. Board of Governors,*
 273 N.W.2d 356 (Wis. 1979) ....................................................................6

*Thiel v. State Bar of Wis.,*
 94 F.3d 399 (7th Cir. 1996) ........................................................... *passim*

*United States v. Salerno,*
 481 U.S. 739 (1987) ...................................................................................7

*Wash. State Grange v. Wash. State Republican Party,*
 552 U.S. 442 (2008) ...................................................................................7

*Will v. Mich. Dept. of State Police,*
 491 U.S. 58 (1989) ...................................................................................27

*Ex Parte Young,*
 209 U.S. 123 (1908) ..........................................................................26, 27

**Constitutions**

U.S. Const. amend. I ........................................................................ *passim*

U.S. Const. amend. XI ..................................................................... *passim*

**Statutes & Bills**

42 U.S.C. § 1983 ...................................................................................16, 25

2017 Wis. Act 235 .......................................................................................16

Fed. R. Civ. P. 12(b)(1) .................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................................16, 24

Wisconsin Supreme Court Rule 10.01 .....................................................1, 2

Wisconsin Supreme Court Rule 10.02 .....................................................2, 3

Wisconsin Supreme Court Rule 10.03 ............................................. *passim*

Wisconsin Supreme Court Rule 10.04 ..............................................3, 26, 27

Wisconsin Supreme Court Rule 10.05 ..............................................3, 13, 25

Wisconsin Supreme Court Rule 10.06 ..........................................................3

Wisconsin Supreme Court Rule 10.11 ...............................................................................3

Wis. Stat. § 893.53 ..............................................................................................................25

**Other Authorities**

*Assembly Bill 154*,
   https://docs.legis.wisconsin.gov/2011/proposals/ab154 ........................................16

*2011 Assembly Bill 154*,
   https://docs.legis.wisconsin.gov/2011/related/proposals/ab154 ...........................16

2 *Moore's Federal Practice* § 12.30[3] (Matthew Bender 3d. ed.)..............................33

State Bar of Wisconsin, *Maintaining Your Membership* (2019),
   https://www.wisbar.org/formembers /membershipandbenefits
   /Pages/Maintaining-Your-Membership.asp ................................................. *passim*

State Bar of Wisconsin, *State Bar Policy Positions*,
   https://www.wisbar.org/aboutus/governmentrelations/pages/policy-
   positions.aspx.............................................................................................................25

## INTRODUCTION

Defendants the State Bar of Wisconsin ("State Bar"), the State Bar of Wisconsin Board of Governors, Christopher E. Rogers (in his official capacity as President of the State Bar), Jill M. Kastner (in her official capacity as President-Elect of the State Bar), Starlyn R. Tourtillott (in her official capacity as Secretary of the State Bar), John E. Danner (in his official capacity as Treasurer of the State Bar), Odalo J. Ohiku (in his official capacity as Chairperson of the State Bar Board of Governors), and Paul G. Swanson (in his official capacity as Immediate Past-President of the State Bar) (collectively, "the Officer Defendants"), submit the following Brief in support of their Motion to Dismiss Plaintiffs' Complaint.

Plaintiffs' Complaint challenges, on First Amendment grounds, the Wisconsin Supreme Court's Rule ("SCR") 10.03, which requires that lawyers licensed in Wisconsin join the State Bar and pay mandatory membership dues. However, this challenge—whether viewed facially or as-applied—is squarely foreclosed by *Keller v. State Bar of California*, 496 U.S. 1 (1990), and its associated cases. Therefore, the Court must dismiss the Complaint for failure to state a claim. Even if *Keller* did not require dismissal of this entire action, the Eleventh Amendment requires dismissal of all claims against the State Bar and the State Bar Board of Governors; dismissal of all claims against Officer Defendants Kastner, Ohiku, and Swanson; and dismissal of Plaintiffs' claim for a refund of their mandatory dues in its entirety. Additionally, the doctrine of qualified immunity requires dismissal of the refund claim against all Officer Defendants, even if the Court does not dismiss the entire Complaint for failure to state a claim.

## BACKGROUND

### A.  The structure of the State Bar

The State Bar is an "association" "of persons licensed to practice law in [Wisconsin]." SCR 10.01(1). The State Bar was created by the Wisconsin Supreme Court as an "exercise of the

court's inherent authority over members of the legal profession as officers of the court." SCR. 10.02(1). This exercise is, as the U.S. Supreme Court has recognized, an "exertion[ ] of the State's law-making power." *Lathrop v. Donohue*, 367 U.S. 820, 824–25 (1961). Thus, the Wisconsin Supreme Court itself directly "provide[s] for the organization and government of the association and [ ] define[s] the rights, obligations and conditions of membership therein." SCR 10.01(2). The Wisconsin Supreme Court created the State Bar to "promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice." *Id.*[1]

"[M]embership" in the State Bar is "a condition precedent to the right to practice law in Wisconsin." SCR 10.01(1). Therefore, under SCR 10.03, the Wisconsin Supreme Court requires "[e]very person who becomes licensed to practice law in [Wisconsin]" to "enroll in the state bar by registering." SCR 10.03(2). All active State Bar members—that is, those members authorized to practice law in Wisconsin, SCR 10.03(4)—must pay "annual membership dues." SCR 10.03(5)(a); SCR 10.03(4)(a).[2] Failure to comply with the Wisconsin Supreme Court's requirement that dues be paid timely may result in the member being "suspended" from the practice of law, according to Wisconsin Supreme Court Rule 10.03(6). This type of state bar

---

[1] More specifically, the "purposes of the association are to aid the courts in carrying on and improving the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service and high standards of conduct; to safeguard the proper professional interests of the members of the bar; to encourage the formation and activities of local bar associations; to conduct a program of continuing legal education; to assist or support legal education programs at the preadmission level; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform and the relations of the bar to the public and to publish information relating thereto; to carry on a continuing program of legal research in the technical fields of substantive law, practice and procedure and make reports and recommendations thereon within legally permissible limits; to promote the innovation, development and improvement of means to deliver legal services to the people of Wisconsin; to the end that the public responsibility of the legal profession may be more effectively discharged." SCR 10.02(2).

[2] All other members of the State Bar pay a designated "fraction of the dues of an active member." SCR 10.03(5)(a). *See generally* SCR 10.03(3) (describing four classes of State Bar membership).

association, where "membership and dues are required as a condition of practicing law," is referred to as an "integrated bar." *Keller v. State Bar of Cal.*, 496 U.S. 1, 5 (1990); *see also Kingstad v. State Bar of Wis.*, 622 F.3d 708, 713 n.3 (7th Cir. 2010) ("integrated," "mandatory," or "unified" bar).

The Wisconsin Supreme Court has identified various individuals and entities responsible for the operation of the State Bar.  "The affairs" of the State Bar are "managed and directed by a board of governors," composed according to SCR 10.05(1), which meets "at least 4 times each year," SCR 10.05(4)(b).  An "executive committee," composed according to SCR 10.06(1), "exercise[s] all the powers and perform[s] all the duties of the board of governors between the [board's] meetings," SCR 10.06(2).  An "administrative staff," headed by "an executive director of the state bar," is "in direct charge of the state bar office, its records, property and equipment." SCR 10.11.  The State Bar has "officers," including "a president, a president-elect, an immediate past-president, a chairperson of the board of governors, a secretary and a treasurer," who are "nominated and elected in the manner provided by the [State Bar's] bylaws."  SCR 10.04(1); *see* SCR 10 App'x ("State Bar Bylaws"), art. II (bylaws providing for nomination and election of officers).  Finally, the State Bar has "section[s]" for "carrying on the work of the association," which are each devoted to a "field of study [in the law]."  SCR 10.05(4)(d).  Membership in any Section is voluntary, *id.*, and the activities of each Section are supported by voluntary dues only, SCR 10.05(4)(e)4.

While the Wisconsin Supreme Court has generally provided that the State Bar may "engage in and fund any activity that is reasonably intended for the purposes of the association" as defined in SCR 10.02(2), "[t]he State Bar may *not* use the compulsory dues of any member who objects . . . for activities that are not necessarily or reasonably related to the purposes of regulating the

- 3 -

legal profession or improving the quality of legal services," SCR 10.03(5)(b)1 (emphasis added). Those activities, according to the Wisconsin Supreme Court, "may be funded only with voluntary dues, user fees or other sources of revenue." *Id.* The State Bar has gone one step further than required by this Wisconsin Supreme Court Rule and includes in the category of activities that may not be funded by mandatory dues "*all* direct lobbying activity on policy matters before the Wisconsin State Legislature or the United States Congress . . . , even lobbying activity deemed germane to regulating the legal profession and improving the quality of legal services." State Bar of Wisconsin, *Maintaining Your Membership* (2019), https://www.wisbar.org/formembers /membershipandbenefits/Pages/Maintaining-Your-Membership.aspx (under "State Bar of Wisconsin Dues Reduction and Arbitration Process (Keller Dues Reduction)" tab).

Consistent with *Keller*, the Wisconsin Supreme Court's Rules further provide that objecting State Bar members may reduce the annual dues they pay to the State Bar by the amount used to fund "activities that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services." SCR 10.03(5)(b)1. Each year, along with an annual dues statement, the State Bar sends to each member a "written notice of the activities that can be supported by compulsory dues and the activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2; *see generally* State Bar Bylaws, art. I, § 5. This notice is often referred to as the "*Keller* Dues Reduction Notice"—named after *Keller v. State Bar of California*, which identified such a procedure as constitutionally adequate to protect members' First Amendment interests. The notice is sent "[p]rior to the beginning of each fiscal year," SCR 10.03(5)(b)2, and is based on data from the most recent fiscal year for which there is an audit report available, *see, e.g.*, Exhibit A, pp. 1–4 (Notice from Fiscal Year 2020). The notice "indicate[s] the cost of each activity, including all appropriate indirect expense[s], and the amount

- 4 -

of dues to be devoted to each activity," SCR 10.03(5)(b)2, and the State Bar voluntarily rounds up from a "strict calculation," *e.g.*, Exhibit A p. 1 (Notice from Fiscal Year 2020). The Notice then provides each member the opportunity to "withhold" from their "annual dues statement" "the pro rata portion of dues budgeted for [the] activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2. This pro rata dues reduction is often referred to as the "*Keller* Dues Reduction."

If a member "contends that the state bar incorrectly set the amount of dues that can be withheld"—by, for example, misclassifying an activity as germane to "the purposes of regulating the legal profession or improving the quality of legal services," the Wisconsin Supreme Court has established a procedure for addressing that challenge. Specifically, the member "may [timely] deliver to the state bar a written demand for arbitration." SCR 10.03(5)(b)3. The State Bar must then "promptly submit the matter to arbitration before an impartial arbitrator." SCR 10.03(5)(b)4. If the arbitrator concludes that an increased pro rata dues deduction is required, "the state bar shall offer such increased pro rata reduction to members first admitted to the state bar during that fiscal year and after the date of the arbitrator's decision." SCR 10.03(5)(b)5. "The costs of the arbitration shall be paid by the state bar." SCR 10.03(5)(b)4; *see generally* State Bar Bylaws, art. I, § 5.

The constitutionality of the State Bar's integrated structure has been affirmed by the Supreme Court,[3] the Seventh Circuit,[4] and the Wisconsin Supreme Court[5] against numerous challenges over the past 75 years.

---

[3] *Lathrop v. Donohue*, 367 U.S. 820 (1961).

[4] *Kingstad v. State Bar of Wis.*, 622 F.3d 708 (2010); *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996); *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (1993); *Levine v. Heffernan*, 864 F.2d 457 (7th Cir.1988).

[5] *Integration of Bar Case*, 11 N.W.2d 604 (Wis. 1943); *In re Integration of the Bar*, 25 N.W.2d 500

### B. Plaintiffs' Complaint

On April 8, 2019, Plaintiffs Jarchow and Dean filed this action against the State Bar, the Board of Governors, and the Officers of the State Bar.  Compl. ¶¶ 2–11 (Dkt. 1).  Plaintiffs are both "licensed attorney[s] under the laws of Wisconsin" and "member[s] of the State Bar of Wisconsin."  Compl. ¶¶ 2–3.

The Complaint identifies 45 separate activities of the State Bar, a subdivision of the State Bar, or a Section of the State Bar, relating to "a broad range of matters of public interest," including "legislat[ive] proposals," "advocacy[y] on public policy issues," "speech and advocacy directed to the public," and State Bar "publications."  Compl. ¶ 31–39; *see also* Exhibit B (listing challenged activities).  The Complaint alleges that these activities were "funded, at least in part, through compelled membership dues."  Compl. ¶ 37.  Based on these 45 activities and the fact that Plaintiffs' are mandatory-dues-paying members of the State Bar pursuant to Wisconsin Supreme Court Rule 10.03, the Complaint asserts two counts.  Count One claims that SCR 10.03's "compelling dues payments to the State Bar violates Plaintiffs' First Amendment rights."  Compl. p. 24 (capitalization altered; emphasis removed).  Count Two claims that SCR 10.03's "requiring Plaintiffs to join the State Bar violates their First Amendment rights."  Compl. p. 26 (capitalization altered; emphasis removed).  For relief, the Complaint seeks a declaratory

(Wis. 1946); *In re Integration of the Bar*, 77 N.W.2d 602 (Wis. 1956); *In re Integration of the Bar*, 93 N.W.2d 601 (Wis. 1958); *Lathrop v. Donohue*, 102 N.W.2d 404 (Wis. 1960); *In re Reg. of the Bar of Wis.*, 81 Wis.2d xxxv (1978); *State ex rel. Armstrong v. Board of Governors*, 273 N.W.2d 356 (Wis. 1979); *In re Discontinuation of the State Bar of Wis. as an Integrated Bar*, 286 N.W.2d 601 (Wis. 1980); *Report of Comm. to Review the State Bar*, 334 N.W.2d 544 (Wis. 1983); *In re Amend. of State Bar Rules*: SCR 10.03(5), slip op. (Wis. Jan. 21, 1986); *In re Petition to Review State Bar Bylaw Amends.*, 407 N.W.2d 923 (Wis. 1987); *In re State Bar of Wisc.: Membership*, 485 N.W.2d 225 (Wis. 1992); *In re Amend. of Sup. Ct. Rules*: *10.03(5)(b) – State Bar Membership Dues Reduction*, 174 Wis. 2d xiii (1993); *In re Petition to Amend SCR 10.03(5)(b)1*, No. 09-08 (Wis. Nov. 17, 2010); *In re Petition for a Voluntary Bar*, No. 11-01 (Wis. July 6, 2011); *In re Petition to Review Change in State Bar Bylaws*, No. 11-05, slip op. (Wis. Oct. 7, 2011); *In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e) and to Amend SCR 10.03(6)*, No. 17-04, slip op. (Wis. Apr. 12, 2018).

judgment, an injunction, and an order requiring the State Bar to refund Plaintiffs' past membership dues.  Compl. p. 27.

## ARGUMENT

## I.  The Complaint Fails to State a First Amendment Claim as a Matter of Law.

Plaintiffs' Complaint claims that Wisconsin Supreme Court Rule 10.03, which requires all persons "licensed to practice law in [Wisconsin]" to be mandatory-dues-paying members of the State Bar, violates the First Amendment.  SCR 10.03(2), (4), (5).  The Supreme Court recognizes two types of constitutional challenges to a state law: "facial challenge[s]," where plaintiffs claim "that the law is unconstitutional in all of its applications," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008), and "as-applied challenge[s]," *id.* at 458, where plaintiffs claim that the law "is unconstitutional because of the way it was applied to the particular facts of their case," *United States v. Salerno*, 481 U.S. 739, 745 n.3 (1987).  In order for a Complaint purporting to bring either type of challenge to survive a motion to dismiss, it must allege plausible facts that establish each required element of a cognizable claim.  *See* Fed. R. Civ. P. 12(b)(6); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015); *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568–70 (7th Cir. 2016).  Plaintiffs' Complaint fails that standard, both as to its purported facial and as-applied challenges to SCR 10.03.

### A.  Any facial First Amendment challenges fail as a matter of law under *Keller* and its progeny.

Count One of the Complaint attempts to state a facial challenge to SCR 10.03's requirement that lawyers pay mandatory dues to the State Bar by claiming that "compelling" *any* "dues payments to the State Bar violates Plaintiffs' First Amendment rights."  Compl. p. 24 (emphasis removed; capitalization altered).  That is, the Wisconsin Supreme Court "requiring Plaintiffs to

make" *any* "financial contribution[ ] in support of the State Bar" infringes the First Amendment. Compl. ¶ 62.  Count Two likewise purports to bring a facial challenge to SCR 10.03's membership requirement, claiming simply that the Wisconsin Supreme Court "requiring Plaintiffs to join" or "be members of the State Bar" violates [Plaintiffs'] First Amendment rights."  Compl. p. 26 & ¶ 71 (emphasis removed; capitalization altered).  These facial challenges are squarely foreclosed by *Keller* and its associated cases.

In *Keller*, the Supreme Court upheld California's "integrated bar"—which required both "membership" and "dues" "as a condition of practicing law" in that State—against First Amendment free-speech and free-association challenges.  496 U.S. at 1, 4–5 ("lawyers admitted to practice in the State may be required to join and pay dues to the State Bar").  The Court held that "the compelled association and integrated bar are justified by" two constitutionally relevant purposes: "the State's interest in regulating the legal profession and improving the quality of legal services." *Id.* at 13–14.  So, while requiring "bar members" to "join the group . . . and to provide financial support for group speech . . . implicate[s] the First Amendment," the requirements are nevertheless "permitted under the First Amendment" because they serve these two "legitimate governmental purposes for the benefit of all members." *Kingstad*, 622 F.3d at 712–13.  The Supreme Court has permitted this type of "mandatory association[ ]," *id.* at 713, for over 50 years, *Lathrop v. Donohue*, 367 U.S. 820, 843 (1961) (upholding the integration of the State Bar of Wisconsin against a First Amendment Challenge).

*Keller*'s holding that a state law "may," consistent with the First Amendment, "require[ ]" "lawyers admitted to practice in the State" to "join and pay dues to the State Bar" dooms the facial challenges to SCR 10.03 in Count One and Count Two.  Wisconsin Supreme Court Rule 10.03 tracks *Keller* exactly: it requires "[e]very person who becomes licensed to practice law in

- 8 -

[Wisconsin]" to "enroll in the state bar by registering" and to pay "annual membership dues." SCR 10.03(2), (5)(a); *compare Keller*, 496 U.S. at 4 ("lawyers admitted to practice in the State may be required to join and pay dues to the State Bar"). This is why the Seventh Circuit has repeatedly upheld Wisconsin's integrated State Bar against First Amendment challenges. *Kingstad*, 622 F.3d 708; *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996); *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (1993); *Levine v. Heffernan*, 864 F.2d 457, 462–63 (7th Cir. 1988); *see generally Levine*, 864 F.2d at 459 (lower court must follow [ ] relevant [higher-court] decision[s]"). Since Count One and Count Two fail to state a cognizable facial First Amendment claim, this Court must dismiss them. *See* Fed. R. Civ. P. 12(b)(6); *Omnicare*, 135 S. Ct. at 1332; *Enger*, 812 F.3d at 568–70.

The Complaint's discussion of *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018)—suggesting that it, not *Keller*, controls here—does not change this outcome. *See* Compl. ¶¶ 60–63. *Janus* held that public-sector unions may not "extract agency fees from nonconsenting employees," 138 S. Ct. at 2486, even though the fees were used to fund union activities that were "germane to the union's duties as collective-bargaining representative," *id.* at 2460 (alterations omitted; citations omitted). The *Janus* majority did not overrule *Keller*. Indeed, the majority never discusses or cites this settled precedent, *see id.* at 2459–86, even as Justice Kagan's dissenting opinion did both, *id.* at 2498 (Kagan, J., dissenting) (citing *Keller*, 496 U.S. at 9–17); *id.* at 2495 n.3 (Kagan, J., dissenting) (discussing *Keller*, 496 U.S. at 14). More to the point, in *Harris v. Quinn,* 573 U.S. 616 (2014), a predecessor to *Janus*, the Court explicitly distinguished *Keller* from its mandatory-union-dues jurisprudence on the basis of the "State's interest in regulating the legal profession and improving the quality of legal services" and "allocating to the members of the bar . . . the expense of ensuring that attorneys adhere to ethical

practices," *id.* at 655–56 (citations omitted).  Given that these interests unquestionably remain post-*Janus*, *Keller* "fits comfortably" with this more-recent decision.  *Id.* at 655; *see Janus*, 138 S. Ct. at 2464–66 (discussing *Harris*).  For all of these reasons, *Keller* remains valid post-*Janus*, is binding on all lower courts, and requires dismissal of the facial challenges here.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (holding that lower courts should follow any Supreme Court "case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions" (citations omitted)).

This is not to say that the Wisconsin Supreme Court may authorize the State Bar to collect and expend mandatory state-bar dues for any purpose, despite the First Amendment interests of objecting members.  Rather, an integrated bar may only "constitutionally fund" with "mandatory dues" those "activities" that are "*germane* to . . . [its] goals." *Keller*, 496 U.S. at 14 (emphasis added); *accord Kingstad*, 622 F.3d at 709 ("germane to the legitimate purposes of the State Bar"). As noted, those constitutionally legitimate goals or purposes are twofold: "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 1; *Kingstad*, 622 F.3d at 718.  Accordingly, objecting members may bring as-applied First Amendment challenges to specific state-bar expenditures, claiming that those expenditures fail this germaneness requirement.  As explained immediately below, however, any as-applied challenge that Plaintiffs' may have attempted to bring here also fails as a matter of law.

### B.  An as-applied First Amendment challenge fails as a matter of law for numerous reasons.

Count One of the Complaint appears to be an attempt to state an as-applied First Amendment challenge to 45 activities of the State Bar.  *See* Compl. ¶¶ 31–39 & p. 24.[6]  These

---

[6] Count Two of the Complaint, challenging SCR 10.03's requirement of mandatory membership in the State Bar, cannot be fairly read to state an as-applied challenge.  *See* Compl. pp. 26–27.  To the extent it

activities relate to "a broad range of matters of public interest" and were allegedly "funded, at least in part, through compelled membership dues." Compl. ¶¶ 31, 37. The Court must dismiss this as-applied First Amendment claim as well: First, the Complaint *never* claims that any of these 45 activities are not germane to the legitimate purposes of the State Bar, which is an essential element of this as-applied First Amendment claim. Part I.B.1, *infra*. Second, some of these activities were funded by voluntary dues and so may not be challenged under *Keller*. Part I.B.2, *infra*. Third and fourth, many of these activities are so old that they fall outside the statute of limitations, Part I.B.3, *infra*, or are so new that they cannot yet be challenged under *Keller*, Part I.B.4, *infra*. Fifth, the five remaining activities that are timely challenged and that were funded by mandatory dues are nevertheless germane from the face of the Complaint. Part I.B.5, *infra*. And finally, Plaintiff Jarchow lacks standing because he has never taken the *Keller* Dues Reduction. Part I.B.6, *infra*.

1. <u>The Complaint fails to allege that any of the State Bar's activities are not germane.</u>

As explained above, *Keller* held that the State Bar may "constitutionally fund" with the "mandatory dues of all members" those activities that are "germane to" "regulating the legal profession and improving the quality of legal services." 496 U.S. at 13–14; *accord Kingstad*, 622 F.3d at 709. Any activity of the State Bar that is not germane to either of these two constitutional interests may not be funded with mandatory dues. *See Keller*, 496 U.S. at 14–16; *accord Kingstad*, 622 F.3d at 714–15, 718. The lack of germaneness of a particular mandatory-dues expenditure is accordingly an essential element to a member's as-applied First Amendment challenge to that expenditure. *See Keller*, 496 U.S. at 14–16; *accord Kingstad*, 622 F.3d at 714–15, 718.

---

does purport to state an as-applied claim, that claim too is squarely foreclosed by *Keller*. 496 U.S. at 1, 4–5 ("lawyers admitted to practice in the State may be required to join . . . the State Bar").

An objecting member wishing to bring a germaneness challenge has the "burden" "to point to the expenditures" that he alleges the State Bar "improperly classified as germane." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 877–78 (1998) (citations omitted).[7]  What a member may not do is "file a generally phrased complaint, then sit back and require the [State Bar] to prove the germaneness of its expenditures without a clue as to which of its thousands of expenditures the objectors oppose." *Id.* at 878 (citations omitted).  The objecting member must meet his burden "with the degree of specificity appropriate at each stage of litigation the[ ] case reaches: motion to dismiss; motion for summary judgment; pretrial conference." *Id.* at 878.

Here, "at [this] stage of the litigation," Plaintiffs have the burden to allege in their Complaint that specific State Bar expenditures were "improperly classified as germane." *Id.* at 877–78; *see Omnicare*, 135 S. Ct. at 1332 (complaint must allege all essential elements); *accord Enger*, 812 F.3d at 568–70.  Only then must the State Bar demonstrate to the Court how those expenditures identified are in fact "germane to" "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13–14; *accord Kingstad*, 622 F.3d at 709.  Yet Plaintiffs have completely failed to carry their burden, since the Complaint does not allege that *any* of the 45 activities it identifies were non-germane.  *See* Compl. ¶¶ 31–39 (45 activities); Compl. ¶¶ 56–69 (Count One).  Indeed, the omission is conspicuous as the Complaint recognizes that "regulating the legal profession and improving the quality of legal services" are legitimate "state interests served by requiring attorneys to join and pay dues to the State Bar." Compl. ¶ 53.  Of course, the Complaint does state that these 45 activities pertain to "a broad range of matters of

---

[7] *Air Line Pilots* involved a challenge to the germaneness of a union's expenditure of mandatory dues, applying the procedures approved in *Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292, 306–07 (1986).  *See* 523 U.S. at 877–78.  An integrated bar can similarly meet its constitutional obligation to permit challenges to its use of mandatory dues by following procedures satisfying the requirements approved in *Hudson*.  *See Keller*, 496 U.S. at 16–17.

public interest," Compl. ¶ 31, but that "generally phrased" statement does not fairly identify any of the expenditures as non-germane, *Air Line Pilots*, 523 U.S. at 878.

At bottom, what Plaintiffs have done is file "a generally phrased complaint," expecting the State Bar to prove the germaneness of its expenditures without a clue as to which . . . of [the] expenditures the objectors oppose" on germaneness grounds. *Air Line Pilots Ass'n*, 523 U.S. at 878 (citations omitted). Since the Supreme Court has squarely foreclosed that tactic, this Court must dismiss Count One's as-applied challenge for failure to state a claim. *Id.* at 878; *see Omnicare*, 135 S. Ct. at 1332; *accord Enger*, 812 F.3d at 568–70.

2. *Keller* forecloses challenges to the State Bar's activities funded by voluntary dues.

As explained by *Keller* and its progeny, and as discussed more fully above, "the First Amendment prohibits the State Bar from funding non-germane activities with compelled dues." *Kingstad*, 622 F.3d at 718; *Keller*, 496 U.S. at 13–14. Therefore, the First Amendment rights of objecting members extend only to challenging the State Bar's use of *mandatory* dues, not to the State Bar's use of *voluntary* dues. *See Keller*, 496 U.S. at 14; *accord Kingstad*, 622 F.3d at 718.

Here, however, a significant number of the 45 activities that the Complaint identifies were funded with voluntary dues, either because the activities were carried out by Sections of the State Bar, which do not use mandatory dues, *see* SCR 10.05(4)(e)4, the State Bar specifically classified the activity as funded by voluntary dues and, therefore, included the costs of that activity in its *Keller* Dues Reduction, or both. These activities are listed immediately below (and more fully described in Exhibit B):

- "*Advocacy on Abortion Coverage*," Compl. ¶ 37(e): funded by voluntary dues according to Fiscal Year 2014 *Keller* Dues Reduction Notice, *see* Ex. A, p. 16;

- "*Advocacy for Criminalizing Threats or Harm to Attorneys*," Compl. ¶ 37(f): funded by voluntary dues according to Fiscal Year 2020 *Keller* Dues Reduction Notice, *see* Ex. A, p. 2;

- 13 -

- "*Advocacy for Elder Law Reform*," Compl. ¶ 37(g): activity of the Elder Law Section and funded by voluntary dues according to Fiscal Year 2020 *Keller* Dues Reduction Notice, *see* Ex. A, pp. 2–3;

- "*Advocacy for Family Law Legislation Addressing Child Relocation*," Compl. ¶ 37(h): activity of the Family Law Section and funded by voluntary dues according to Fiscal Year 2020 *Keller* Dues Reduction Notice, *see* Ex. A, pp. 2–3;

- "*Advocacy for Restoring Legal Services Corporation (LSC) Funding*," Compl. ¶ 37(i): funded by voluntary dues according to Fiscal Year 2019 *Keller* Dues Reduction Notice, *see* Ex. A, p. 6;

- "*Advocacy To Include Parent of Sibling to Notice of Removal*," Compl. ¶ 37(j): funded by voluntary dues according to Fiscal Year 2018 and 2019 *Keller* Dues Reduction Notices, *see* Ex. A, pp. 5, 8;

- "*Advocacy Related to Unemployment Insurance Fraud*," Compl. ¶ 37(k): funded by voluntary dues according to Fiscal Year 2018 *Keller* Dues Reduction Notice, *see* Ex. A, p. 8;

- "*Advocacy Against Amending Child Custody Presumptions*," Compl. ¶ 37(*l*): funded by voluntary dues according to Fiscal Year 2016 *Keller* Dues Reduction Notice, *see* Ex. A, p. 13;

- "*Advocacy Against Confidentiality Exception for School Officials*," Compl. ¶ 37(m): funded by voluntary dues according to Fiscal Year 2014 *Keller* Dues Reduction Notice, *see* Ex. A, p. 17;

- "*Advocacy To Restore Felon Voting Rights*," Compl. ¶ 37(n): funded by voluntary dues according to Fiscal Year 2012 *Keller* Dues Reduction Notice, *see* Ex. A, p. 21;

- "*Advocacy to Eliminate Spiritual Exception to Child Abuse Law*," Compl. ¶ 37(o): funded by voluntary dues according to Fiscal Year 2012 *Keller* Dues Reduction Notice, *see* Ex. A, p. 21;

- "*Advocacy Against DNA Samples From Juvenile Sex Offenders*," Compl. ¶ 37(p): funded by voluntary dues according to Fiscal Year 2012 *Keller* Dues Reduction Notice, *see* Ex. A, p. 21;

- "*Policy Positions—2016*," Compl. ¶¶ 38(a) & 38(a)i–xiv (listing publishing of a "book of policy" and taking 14 separate policy positions): activity of the Government Relations Subdivision and funded by voluntary dues according to Fiscal Year 2017 and Fiscal Year 2018 *Keller* Dues Reduction Notices, *see* Ex. A, pp. 8, 11;

- *"Advocacy on 'Disparate and Mass Incarceration,'"* Compl. ¶ 38(f): funded by voluntary dues according to Fiscal Year 2020 *Keller* Dues Reduction Notice, *see* Ex. A, pp. 2–3;

- *"Commentary on President Trump's 'Refugee Ban,'"* Compl. ¶ 38(i): activity of the Labor and Employment Section and funded by voluntary dues according to Fiscal Year 2019 *Keller* Dues Reduction Notice, *see* Ex. A, p. 6 ("Section Lobbying and Administrative Services. Expenses related to lobbying and administrative services provided by the State Bar of Wisconsin to the 24 sections.").

Because these activities were not funded by mandatory dues, the Court must dismiss Count One to the extent it challenges these activities. *See Omnicare*, 135 S. Ct. at 1332; *accord Enger*, 812 F.3d at 568–70.[8]

As noted, the information for the source of funding for these activities comes in part from the State Bar's *Keller* Dues Reduction Notices, which are mailed to each member of the State Bar each year as directed by Wisconsin Supreme Court rules. SCR 10.03(5)(b)2; Exhibit A (true and accurate copies of the relevant *Keller* Dues Reduction Notices). This Court may consider these Notices now at the motion-to-dismiss stage for two reasons: First, the Complaint refers to the Notices. Compl. ¶¶ 20, 23 & nn.4, 8 (citing the *Keller* Dues Reduction Notice for Fiscal Year 2017); *see Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Second, the Notices are judicially noticeable as part of the public record. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008).

---

[8] Also worth noting is the State Bar's practice of broadly defining the category of non-germane expenditures that must be funded by voluntary dues to include "*all* direct lobbying activity on policy matters before the Wisconsin State Legislature or the United States Congress," even when such activities would otherwise be germane under *Keller*. State Bar of Wisconsin, *Maintaining Your Membership*, *supra*. Further, the State Bar often rounds the value of the *Keller* Dues Reduction up from a "strict calculation," thus providing even more assurance that dissenting members' First Amendment rights are protected. *E.g.*, Exhibit A, p. 1 (Notice from Fiscal Year 2020).

3.  <u>The statute of limitations bars challenges to the State Bar's activities occurring before April 8, 2013.</u>

When a claim is "indisputably time-barred" under the applicable statute of limitations, the Court must dismiss it under Rule 12(b)(6).  *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (citation omitted).  Section 1983 of Title 42 of the United States Code, which provides the federal cause of action for Plaintiffs' claims, *see* Compl. ¶ 12 & pp. 24–25, does not possess its own statute of limitations.  *See Malone v. Corr. Corp of Am.*, 553 F.3d 540, 542 (7th Cir. 2009).  Therefore, the Court must look to state law to determine the applicable limitations period.  *See id*.  The governing state law in Wisconsin for this purpose is Wis. Stat. § 893.53, *Malone*, 553 F.3d at 542; *see also Hemberger v. Bitzer*, 574 N.W.2d 656, 660 (Wis. 1998), which established a six-year limit at the time of most of the allegations in the Complaint.[9]

Here, Plaintiffs filed their Complaint on April 8, 2019, so activities that occurred before April 8, 2013 may not be challenged.  These time-barred activities, which are more fully described in Exhibit B, are as follows:

- "*Advocacy on Abortion Coverage*," Compl. ¶ 37(e): occurred between 2011 and 2012;[10]

- "*Advocacy Against Confidentiality Exception for School Officials*," Compl. ¶ 37(m): occurred between 2011 and 2012;

---

[9] Wis. Stat. § 893.53 was amended effective April 5, 2018, to impose a three year statute of limitations. 2017 Wis. Act 235, §§ 26, 34.

[10] The Complaint claims, based on the State Bar's website, that this activity occurred in 2015 to 2016. *See* Compl. ¶ 37(e) n.15 (citing State Bar of Wisconsin, *State Bar Policy Positions*, https://www. wisbar.org/aboutus/governmentrelations/pages/policy-positions.aspx).  However, the activity alleged here is the opposition to AB 154.  *See* State Bar of Wisconsin, *State Bar Policy Positions*, https://www.wisbar.org/aboutus/governmentrelations/pages/policy-positions.aspx (entry for "Assembly Bill 154" under "2015-2016" header).  While the website states that this opposition occurred in 2015 to 2016, *id.*, this is a typographical error.  As the links in the website make clear, *see id.* ("Bill History" and "Bill Text" links), AB 154 was introduced in 2011 and failed to pass in 2012, *see* Wisconsin State Legislature, *Assembly Bill 154*, https://docs.legis.wisconsin.gov/2011/proposals/ab154; *2011 Assembly Bill 154*, https://docs.legis.wisconsin.gov/2011/related/proposals/ab154.  Accordingly, the Government Relations Subdivision's opposition to AB 154 is beyond the applicable statute of limitations, the website's typographical error notwithstanding.

- "*Advocacy To Restore Felon Voting Rights*," Compl. ¶ 37(n): occurred between 2009 and 2010;

- "*Advocacy to Eliminate Spiritual Exception to Child Abuse Law*," Compl. ¶ 37(o): occurred between 2009 and 2010;

- "*Advocacy Against DNA Samples From Juvenile Sex Offenders*," Compl. ¶ 37(p): occurred between 2009 and 2010;

- "*Advocacy for Legal Services Consumer Protection Act*," Compl. ¶ 37(q): occurred in 2007;

- "*Advocacy for Prosecutor Funding*," Compl. ¶ 38(*l*): occurred in 2010;

- "*Advocacy for Access to Justice, 'Consumer Safeguards,' and 'Judicial Campaign Reform,'*" Compl. ¶ 38(m): occurred in 2007.

Therefore, to the extent Count One relies upon these activities, it is "indisputably time-barred" and must be dismissed. *Rosado*, 832 F.3d at 716.

4. *Keller* forecloses challenges to the State Bar's activities occurring after the State Bar's most recent available audit.

In addition to challenging State Bar activities that are too old, the Complaint challenges State Bar activities that are too new. *Keller* does not require the State Bar to conduct a germaneness analysis "*prior to* each" expenditure in order to meet its First Amendment obligation not to fund non-germane activities with mandatory dues. 496 U.S. at 16 (emphasis added). Rather, the State Bar complies with *Keller* by providing all members with an optional "*advance* reduction of dues," *Hudson*, 475 U.S. at 304 (emphasis added), calculated from "the breakdown [of germane and non-germane activities] in the most recent year" for which such an audit is available, *Knox*, 567 U.S. at 317 n.7; *see generally Keller*, 496 U.S. at 17 ("We believe an integrated bar could certainly meet its [First Amendment] obligation by adopting the sort of procedures described in *Hudson*."). Such advance reduction respects the First Amendment rights of State Bar members

- 17 -

because it is "assum[es]" that a State Bar's "allocation of funds for chargeable and nonchargeable purposes is not likely to vary greatly from one year to the next." *Knox*, 567 U.S. at 318.[11]

Here, the State Bar's *Keller* Dues Reduction procedure, as defined by the Wisconsin Supreme Court's Rules, is an optional "advance reduction of dues" that meticulously follows the requirements of *Keller*, as the Seventh Circuit has held. *See Crosetto*, 12 F.3d at 1404–05. The State Bar sends a notice "[p]rior to the beginning of each fiscal year," detailing which "activities [ ] can be supported by compulsory dues and [which] activities [ ] cannot be supported by compulsory dues," SCR 10.03(5)(b)2, based on the data from the most recently audited fiscal year, *see, e.g.*, Exhibit A, p. 1 (Notice from Fiscal Year 2020). It then provides each member with the opportunity to "withhold" from their "annual dues statement" "the pro rata portion of dues budgeted for [the] activities that cannot be supported by compulsory dues," including "all appropriate indirect expense[s]." SCR 10.03(5)(b)2.

Following this procedure, the State Bar has already sent its *Keller* Dues Reduction Notice for Fiscal Year 2020—which runs from July 1, 2019 to June 30, 2020—to all its members. *See* Exhibit A, pp. 1–4 (Notice for Fiscal Year 2020); State Bar Bylaws art. I, § 2 (defining fiscal year). This most recent notice is based on State Bar activities from Fiscal Year 2018—which ran from July 1, 2017 to June 30, 2018—since this was "the most recent fiscal year for which there is an

---

[11] Based on the State Bar's records, the Supreme Court's assumption that the allocation of funds for chargeable and nonchargeable purposes would not change significantly from year to year is well grounded. The value of the *Keller* Dues Reduction from Fiscal Year 2006 to Fiscal Year 2020, calculated according to the State Bar's more-generous procedures, is as follows: $6.60 in 2006, $5.00 in 2007, $5.25 in 2008, $9.50 in 2009, $7.75 in 2010, $10.25 in 2011, $5.25 in 2012, $4.25 in 2013, $5.75 in 2014, $4.69 in 2015, $5.08 in 2016, $6.91 in 2017, $7.46 in 2018, $9.95 in 2019, and $15.45 in 2020. *See* Exhibit A, pp. 1, 5, 7, 10, 12, 14, 16, 18, 20, 23, 27, 31, 35, 39, 43. The *Keller* Dues Reduction values for 2019 and 2020 were influenced by the State Bar's voluntary implementation of its policy to include "*all* direct lobbying activity" in the *Keller* Dues Reduction, "even lobbying activity" that would otherwise have been "deemed germane [under *Keller*] to regulating the legal profession and improving the quality of legal services." *See* State Bar of Wisconsin, *Maintaining Your Membership*, *supra*.

- 18 -

audit report" available.  *See* Exhibit A, p. 1 (Notice for Fiscal Year 2020); *cf. Keller*, 496 U.S. at 17; *Hudson*, 475 U.S. at 304; *Knox*, 567 U.S. at 318.  Accordingly, the State Bar has not yet audited any of its activities occurring after June 30, 2018, for germaneness, which means it has not yet concluded which activities from that date are fundable with mandatory dues.  As shown more fully in Exhibit B, the following alleged activities described in the Complaint occurred after the most recent *Keller* Dues Reduction Notice from the State Bar:

- "*Advocacy for Criminal Justice Issues in Governor's Budget*," Compl. ¶ 37(a): occurred in 2019;

- "*Advocacy for Juvenile Justice Reform*," Compl. ¶ 37(b): occurred in 2019;

- "*Advocacy Concerning State's Criminal Justice Budget*," Compl. ¶ 37(c): occurred in 2019;

- "*Advocacy to Increase Private Bar Rate in Criminal Justice Budget*," Compl. ¶ 37(d): occurred 2019;

- "*Advocacy on Policies Respecting the Legal Profession*," specifically on "expungement," Compl. ¶ 37(r): occurred in 2019;

- "*Commentary on Online Gun Sales*," Compl. ¶ 38(b): occurred in 2019;

- "*Advocacy on Sexual Harassment in the Legal Profession*," Compl. ¶ 38(d): occurred in late 2018;

- "*Adoption of 'Diversity & Inclusion Action Plan,'*" Compl. ¶ 38(e): occurred in late 2018.

Given that *Keller* does not impose a First Amendment duty to conduct a germaneness analysis for these activities at this time, *Keller*, 496 U.S. at 17; *Hudson*, 475 U.S. at 304; *Knox*, 567 U.S. at 318, Plaintiffs' claim is not ripe and they have not stated a valid First Amendment challenge to these activities as a matter of law.  Further, there is no reason to doubt that the State Bar will properly classify these activities in the future, given its meticulous and generous *Keller* Dues Reduction procedures.  *See Crosetto*, 12 F.3d at 1404–05.  In particular, the State Bar has

voluntarily decided not to fund *any* "advocacy" with mandatory dues—no matter its germaneness—which would include any "advocacy" activities that Plaintiffs may have correctly labeled above. *See* State Bar of Wisconsin, *Maintaining Your Membership*, *supra*.

> 5. <u>The five activities of the State Bar that are funded by mandatory dues and that Plaintiffs have timely challenged are nevertheless germane from the face of the Complaint.</u>

After considering the source, funding, and timeliness of the 45 activities identified in the Complaint, Parts I.B.2–4, *supra*, only five activities remain that were actually taken by the State Bar, occurred within the statute of limitations, and were funded by mandatory dues. However, from the face of the Complaint itself, these activities are plainly germane to the two constitutional purposes of the integrated bar—"regulating the legal profession and improving the quality of legal services"—and so cannot support an as-applied First Amendment claim. *Keller*, 496 U.S. at 13; *accord Kingstad*, 622 F.3d at 718.[12]

To determine whether activities are germane and thus fundable with mandatory dues, the Court asks "whether the [ ] expenditures are *necessarily or reasonably incurred* for the purpose of regulating the legal profession or improving the quality of the legal services available to the people of the State." *Keller*, 496 U.S. at 14 (citations omitted). In other words, the "reviewing court [must] consider whether [the] expenditures . . . are reasonably related to the [two] constitutionally relevant purposes of [the bar]." *Kingstad*, 622 F.3d at 716. "[T]he State Bar is not required to prove that its expenditures were actually successful in accomplishing the stated purpose, or that they served only that purpose, or that [they were] a particularly wise use of the State Bar's funds." *Id.* at 719. In conducting such an inquiry, "[t]he political or ideological nature of the [State Bar's]

---

[12] Of course, as explained in Part I.B.1, *supra*, the Complaint fails to claim that any of the 45 activities are non-germane, which is an independent basis to dismiss Count One in its entirety.

speech," if any, is simply one "factor[ ]" for the Court to consider.  *Kingstad*, 622 F.3d at 716.

Applying this standard here, all five remaining activities are easily germane.

The first remaining activity is the State Bar's "*Advocacy on Second Amendment Rights*,"

Compl. ¶ 38(c), which, according to the Complaint, comprised a single tweet linking to a news

article about then-recent Second Amendment cases before the Supreme Court, *see* Compl. ¶ 38(c)

& nn.53–54.  This single tweet is germane because it provides analysis of Supreme Court activity

for Wisconsin lawyers and so "elevat[es] the educational . . . standards of the Bar."  *Keller*, 496

U.S. at 8 (quoting *Lathrop*, 367 U.S. at 842–43 (plurality op.)); *accord Thiel*, 94 F.3d at 405

(holding that State Bar's circulation of "*Bill of Rights Pamphlet*, an educational document," was

germane).

The second remaining activity is the State Bar's "*Commentary on Churches Challenging

City's LGBT Ordinance*."  Compl. ¶ 38(g).  This too is a single tweet linking to a news article

summarizing a recent Wisconsin lawsuit challenging a city ordinance.  Compl. ¶ 38(g) & nn.58–

59.  As with the first remaining activity, such information on recent legal developments "elevat[es]

the educational . . . standards of the Bar" and so is germane under *Keller*.  496 U.S. at 8 (quoting

*Lathrop*, 367 U.S. at 842–43 (plurality op.)); *accord Thiel*, 94 F.3d at 405 ("*Bill of Rights

Pamphlet*").

The third remaining activity is "*Advocacy on President Trump's National Labor Relations

Board Nominee*."  Compl. ¶ 38(h).  Here again, this activity is a single tweet from the State Bar,

this time linking to an article by the State Bar's Labor & Employment Section that analyzes a then-

recent nominee to the National Labor Relations Board.  Compl. ¶ 38(h) & nn.60–62.  Again, this

then-timely information "elevat[es] the educational . . . standards of the Bar" and so is germane

under *Keller*.  496 U.S. at 8 (quoting *Lathrop*, 367 U.S. at 842–43 (plurality op.)); *accord Thiel*, 94 F.3d at 405 ("*Bill of Rights Pamphlet*").

The fourth remaining activity is the State Bar's "*Response to Statements by President Trump*," defending "a district [ ] judge that suspended an executive order" against the President's characterization of "the judge as a 'so-called judge.'"  Compl. ¶ 38(j).  This activity is germane under *Keller* since the defense of the impartial judiciary "improve[s]" the "functioning of the courts, judicial efficacy and efficiency," which are legitimate concerns for the State Bar.  *Alper v. Fla. Bar*, 771 So. 2d 523, 524–25 (Fla. 2000) (citation omitted) (per curiam) (conducting a *Keller* germaneness analysis).

The last remaining activity is the State Bar's "*Advocacy for Nondiscrimination Policies Based on Sexual Orientation and Gender Identity*."  Compl. ¶ 38(k).  As with the first, second, and third remaining activities, this activity is a single tweet promoting an upcoming continuing legal education session for attorneys on labor and employment law.  *See* Compl. ¶ 38(k).  Accordingly, it too is germane because it "elevat[es] the educational . . . standards of the Bar."  *Keller*, 496 U.S. at 8 (quoting *Lathrop*, 367 U.S. at 842–43 (plurality op.)); *accord Thiel*, 94 F.3d at 405 ("*Bill of Rights Pamphlet*").[13]

6.  <u>Plaintiff Jarchow lacks standing because he has never taken the *Keller* Dues Reduction.</u>

Independent of the above, Part I.B.1–5, *supra*, this Court must dismiss Count One as to Plaintiff Jarchow for lack of standing.  Federal Rule of Civil Procedure 12(b)(1) requires the

---

[13] While the Complaint labels three of these five remaining activities as "Advocacy," that label does not affect the *Keller* germaneness inquiry.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) ("legal conclusion[s]" in complaint not accepted as true).  In any event, the State Bar does *not* fund any "advocacy"—defined as "direct lobbying activity on policy matters before the Wisconsin State Legislature or the United States Congress"—with mandatory dues.  *See* State Bar of Wisconsin, *Maintaining Your Membership*, *supra*.

dismissal of a complaint if the Court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), which includes a plaintiff's failure to establish Article III standing. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015); *accord Hollingsworth v. Perry*, 133 S. Ct. 2652, 2656 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation."). In order to have Article III standing, a plaintiff has the burden to show an "injury in fact—an invasion of a legally protected interest"—that is "fairly traceable to the challenged action of the defendant" and that is "likely" to "be redressed by a favorable decision" from the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted; citations omitted); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements").

The "legally protected interest" at issue here, of course, is the First Amendment rights of the Plaintiffs. Compl. pp. 24, 26. As already discussed, the contours of those rights are defined by *Keller*, which holds that the First Amendment grants members the right to prevent the State Bar from using their dues on non-germane expenditures without their consent. *See Keller*, 496 U.S. at 13–14; *accord Kingstad*, 622 F.3d at 712–13. Therefore, if a State Bar member *has* consented to the State Bar's use of his dues on non-germane expenditures, then the State Bar does not "inva[de]" that member's "legally protected [First Amendment] interest" when the State Bar uses his dues for those activities. *Lujan*, 504 U.S. at 560; *Keller*, 496 U.S. at 13–14; *Kingstad*, 622 F.3d at 712–13; *accord Katz v. United States*, 389 U.S. 347, 357–58 & n.22 (1967) ("A search to which an individual consents meets Fourth Amendment requirements . . . ."). In other words, a State Bar member who consents to the State Bar's use of his dues on non-germane expenditures suffers no Article III injury, and thus has no standing to sue when the State Bar makes such expenditures. *Lujan*, 504 U.S. at 560–61.

- 23 -

*Keller* also identified the constitutionally sufficient procedures by which the State Bar may obtain the consent of its members before its use of dues on non-germane activities. 496 U.S. at 16–17 (citing *Hudson*, 475 U.S. 292); *see* Part I.B.2. The Wisconsin Supreme Court and the State Bar have established and followed procedures meeting those requirements. SCR 10.03(5)(b); State Bar Bylaws, art. I, § 5; *see Crosetto*, 12 F.3d at 1404–05 (describing and affirming the State Bar's procedure). If a State Bar member does *not* withhold his dues when these procedures give him the opportunity to do so, then, under *Keller*, he *has* consented to the use of his dues on non-germane expenditures. That a member who has consented in this manner may subsequently wish to revoke his consent prior to receiving the next *Keller* Dues Reduction Notice is irrelevant for First Amendment purposes. Indeed, allowing the State Bar's 25,000 members to revoke their annual consent *ad hoc* would impose an "extraordinary burden" on the State Bar that the *Keller* Dues Reduction procedure was plainly designed to avoid. *See Keller*, 496 U.S. at 16–17 (citations omitted).

Here, Plaintiff Jarchow has *never* taken the optional *Keller* Dues Reduction, *see* Decl. of Paul Marshall dated May 21, 2019 ("Marshal Decl.") ¶ 2 & Ex. 1,[14] which means that he *has* consented to the State Bar's use of his dues on any non-germane activities, despite his protestations in the Complaint to the contrary, *see Crosetto*, 12 F.3d at 1404–05. Given this consent, Plaintiff Jarchow has suffered no "invasion" of his "legally protected [First Amendment] interest" from the State Bar's use of his dues on any non-germane activities. *Lujan*, 504 U.S. at 560. Accordingly,

---

[14] This Court may consider the State Bar's records of Plaintiff Jarchow not taking the *Keller* Dues Reduction for any year in which he was a member of the State Bar. *See* Marshal Decl, ¶ 2 & Ex. 1. "[U]nlike a Rule 12(b)(6) [motion], the court need not confine its evaluation to the face of the pleadings, but may review or accept any evidence" when considering dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. 2 *Moore's Federal Practice* § 12.30[3] (Matthew Bender 3d. ed.); *see also Hammond v. Clayton*, 83 F.3d 191, 192 (7th Cir. 1996).

Plaintiff Jarchow has suffered no injury and so does not have Article III standing as to Count One, to the extent it states an as-applied challenge. *See* Fed. R. Civ. P. 12(b)(1); *Lujan*, 504 U.S. at 560.

**II. The Eleventh Amendment Requires Dismissal of Much of this Lawsuit.**

    **A. The Eleventh Amendment requires dismissal of all claims against the State Bar and the State Bar Board of Governors.**

Two state entities named as defendants in the Complaint, the State Bar itself and the State Bar Board of Governors, are immune from suit in this Court under the Eleventh Amendment, thus all claims against these two entities should be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

The Eleventh Amendment "bars suit" against "the state itself" and any "'arm' or 'alter ego' of the state." *Thiel*, 94 F.3d at 400–01, *overruled on other grounds by Kingstad*, 622 F.3d at 717 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *see also Crosetto*, 12 F.3d at 1400–03. In *Thiel*, the Seventh Circuit held that the State Bar enjoys "Eleventh Amendment immunity" as an arm of the State because "the Wisconsin Supreme Court exercises a great deal of control over the Bar," "[t]he Wisconsin Supreme Court has ultimate authority" to "adopt and amend" the Rules that "the Bar enforces," "the Bar's role is completely defined by the [Wisconsin Supreme] Court," and "the Bar acts as an agent of the [Wisconsin Supreme] Court." 94 F.3d at 402–03 (citations omitted) (also noting that "Wisconsin has not waived the Bar's sovereign immunity in federal court"). Accordingly, "the Eleventh Amendment precludes" Plaintiffs' "suit against" these entities. *Id.*

*Thiel*'s Eleventh Amendment holding readily extends to the State Bar Board of Governors as well. That entity was similarly established by the Wisconsin Supreme Court to "manage and direct" the "affairs" of the State Bar, SCR 10.05(1), and so is subject to equal control by the Wisconsin Supreme Court, as described in *Thiel*. *See* 94 F.3d at 403. Indeed, failure to dismiss the claims against the Board of Governors along with the claims against the State Bar itself would

"sacrifice[ ]" the "real interests served by the Eleventh Amendment" to "elementary mechanics of captions and pleading," against which the Supreme Court has cautioned courts. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997).

**B.   The Eleventh Amendment also requires dismissal of all claims against Kastner, Ohiku, and Swanson because their official duties are not at issue here.**

Notwithstanding the Eleventh Amendment, the doctrine of *Ex Parte Young* allows federal courts to adjudicate suits against "individual . . . state official[s]" named as defendants for "prospective injunctive relief" only. *See Thiel*, 94 F.3d at 403 (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). According to *Ex Parte Young*, individual state officials do not enjoy the State's sovereign immunity when they take "action[ ] contrary to the Constitution," *id.* (citations omitted), since "a state cannot authorize" such actions, *Frances J. v. Wright*, 19 F.3d 337, 342 (7th Cir. 1994), *abrogated on other grounds by Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). Therefore, a federal court may grant "injunctive relief" against the official to prevent "future" unconstitutional "conduct." *See id.* In order to benefit from the *Ex Parte Young* exception, a plaintiff must name as a defendant the state officer charged with carrying out the "duties" that are allegedly unconstitutional. *See Ex Parte Young*, 209 U.S. at 160–61. Only that office-holder is "a proper party to [ ] suit." *Id.*

Here, the Complaint's claims against the President-Elect (Kastner), the Immediate Past-President (Swanson), and the Chairperson of the Board of Governors (Ohiku) must be dismissed. The official duties of the President-Elect and the Immediate Past-President are to "be a member-at-large of the board of governors and the executive committee" and to "perform all other duties assigned to [him or her] by the president or board of governors." SCR 10.04(2)(b). The official duties of the Chairperson of the Board of Governors are to "be a member-at-large of the board of governors," to "be a member of the executive committee ex officio," and to "preside at all meetings

of the board of governors." SCR 10.04(2)(c). None of these duties encompass responsibility for the actions that Plaintiffs challenge as unconstitutional here: the collection of mandatory membership dues and the maintenance of the mandatory membership rolls. *See* Compl. pp. 24–26. Accordingly, these officials are not proper defendants, *see Ex Parte Young*, 209 U.S. at 160–61, and so must be dismissed, *see* Fed. R. Civ. P. 12(b)(1).

**C. The Eleventh Amendment bars Plaintiffs' claims for a refund of their mandatory dues in its entirety.**

The Complaint includes as a prayer for relief an "[o]rder" for "Defendants to refund Plaintiffs' membership dues payments collected in violation of Plaintiffs' rights." Compl. p. 27. As explained above, the Eleventh Amendment bars this claim for relief as to the State Bar and the State Bar Board of Governors, given that *no claim* may proceed against these state entities. Part II.A, *supra*. The Eleventh Amendment bars this claim for relief against all of the Officer Defendants as well, so the Court must dismiss it. *See* Fed. R. Civ. P. 12(b)(1).

As noted, the doctrine of *Ex Parte Young* allows federal courts to adjudicate claims against "individual . . . state official[s]," despite the Eleventh Amendment, for "*prospective injunctive relief*" only. *Thiel*, 94 F.3d at 403 (citing *Ex Parte Young*, 209 U.S. at 159–60) (emphasis added). This doctrine does not allow claims for the "retroactive" recovery of an "amount of money" from either the State or a state official named in his or her official capacity. *Edelman v. Jordan*, 415 U.S. 651, 664–68, 675–77 (1974); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants" (citation omitted)); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). So, while

- 27 -

"a [Section] 1983 action may be instituted [against state officials in their official capacities], a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415 U.S. at 677.

Here, the claim for a refund of past mandatory dues from the Officer Defendants, named in their official capacities, is retroactive relief that takes the form of money damages. *See Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 622–23 (2002) (claim for a tax "refund" was barred by the Eleventh Amendment); *see also Seminole Tribe v. Fla. Dept. of Revenue*, 750 F.3d 1238, 1243–44 (11th Cir. 2014) (Eleventh Amendment barred suit for tax refund, even though plaintiff named the director of the state department of revenue); *see generally Edelman*, 415 U.S. at 668 (distinguishing between the "payment of state funds" "as a necessary consequence of compliance in the future with a substantive federal-question determination" and the payment of state funds as a "retroactive award of monetary relief").  Accordingly, this claim for retroactive relief falls outside the *Ex Parte Young* exception, is barred by the Eleventh Amendment, and must be dismissed.  *See* Fed. R. Civ. P. 12(b)(1).

**III.  Qualified Immunity also Shields the Officer Defendants from Claims for a Refund.**

Independent of the Eleventh Amendment, Part II, *supra*, all claims for a refund against the Officer Defendants must be dismissed under the doctrine of qualified immunity.  Officials are "shielded from liability by the doctrine of qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Crosetto*, 12 F.3d at 1404 (citations omitted) (dismissing First Amendment individual-capacity claims for damages against "the Executive Director of the Wisconsin State Bar").  The qualified-immunity doctrine "is intended to provide governmental officials with the

- 28 -

ability to anticipate reasonably when their conduct may give rise to liability for damages." *Id.* at 1403 (citations omitted). When an official raises qualified immunity as a defense, the plaintiff bears the "burden" to show "that a sufficient consensus clearly established the existence of a violated constitutional right." *Id.* at 1404

Here, in light of *Keller* and its progeny, Plaintiffs cannot even "beg[i]n to meet their burden." *Id.* Indeed, far from "clearly established" in Plaintiffs' favor, *Keller* and its associated cases have clearly established that the Officers of the State Bar may both collect mandatory state-bar membership dues and maintain mandatory state-bar membership rolls. *See, e.g.*, *Keller*, 496 U.S. at 14; *Kingstad*, 622 F.3d at 712–13. So, even if this Court were to conclude—contrary to *Keller*—that the Officer Defendants' actions *did* violate Plaintiffs' First Amendment rights, it must still dismiss any damages claims against the Officer Defendants because those rights were not "clearly established" at the time the actions took place. *See Crosetto*, 12 F.3d at 1403. Indeed, no reasonabl[e]" officers would have "anticipate[d]" such a large shift in First Amendment jurisprudence, sufficient to put them on notice that "their conduct may give rise to liability for damages." *Id.*

**CONCLUSION**

For all these reasons, the Court should dismiss the Complaint for failure to state a claim.

If this Court does not dismiss the entire Complaint for failure to state a claim, it should, at a

minimum, dismiss Plaintiff Jarchow for lack of standing as to a portion of Count One; dismiss the

State Bar and the State Bar Board of Governors; dismiss Officer Defendants Kastner, Ohiku, and

Swanson; and dismiss all damages claims against all Officer Defendants.


Dated: May 21, 2019                        Respectfully submitted,



                                           */s/ Roberta F. Howell*                     
                                           Roberta F. Howell WI Bar No. 1000275
                                           Kevin M. LeRoy WI Bar No. 1105053
                                           Foley & Lardner LLP
                                           Suite 5000
                                           150 East Gilman Street
                                           Madison, WI 53703-1482
                                           Post Office Box 1497
                                           Madison, WI 53701-1497
                                           608.257.5035
                                           608.258.4258

                                           *Attorneys for Defendants*

4838-4985-5636.6